106 P.3d 782 (2005)
STATE of Washington, Respondent,
v.
Binh THACH, Appellant.
No. 30757-0-II.
Court of Appeals of Washington, Division 2.
January 19, 2005.
Publication Ordered February 15, 2005.
*785 Kevin John McClure, City Attorney's Office, Vancouver, WA, for Respondent.
David Schultz, Attorney at Law, Camas, WA, for Appellant.
BRIDGEWATER, J.
Binh Thach appeals his conviction of second degree assault  domestic violence. We affirm.
On January 24, 2003, Renee Thach planned to drop off some paperwork at the unemployment office for training benefits. She had been out of work since September 2002. After *786 taking her shower, she proceeded to apply her makeup.
Binh had overheard a conversation Ms. Thach had with a friend regarding her plans for the day and he was upset because she had not shared her plans with him. Ms. Thach sat with her back to Binh. When Binh questioned his wife about her plans for the day, she responded rudely to him. Her comment upset him and Binh shoved his wife's shoulder with his hand, upsetting her. She started to get up but Binh pushed her away and knocked her into the wall.
Binh and his wife proceeded to argue. Ms. Thach attempted to push him aside so she could finish getting dressed. But when she pushed him, he pushed back and she fell to the ground, losing her towel.
The two continued to argue and Ms. Thach grabbed Binh's shoulders and tried to push him out of her way. At the same time, Binh attempted to move Ms. Thach by her shoulders. The two began to wrestle. Ms. Thach asked Binh to allow her to get dressed and he released her.
Once she finished getting dressed, Ms. Thach went to her sock drawer to get a pair of socks. When Ms. Thach opened her sock drawer and began to put on her socks, Binh became upset. He asked his wife if she intended to go somewhere and she replied that she intended to leave the apartment because she did not want to deal with him anymore.
She got up and again pushed Binh out of the way so she could get her other sock. This made Binh more upset and the two renewed their wrestling match. Ms. Thach stood up and grabbed her husband's thigh to push him out of the way. Binh shoved his wife's arms away. Ms. Thach stood up and pushed her husband.
Ms. Thach ended up on the ground with her husband on top of her. She attempted to kick him in the groin and pinch him. Binh tried to gain control of Ms. Thach's kicking and he held onto her leg. This caused Ms. Thach to pull her hamstring. She screamed when she pulled her hamstring and Binh backed off. Ms. Thach then ran out of the apartment.
Ms. Thach went to the apartment leasing office. Amanda Guderjahn, the apartment manager, and her assistant were in the leasing office. Ms. Thach walked into the leasing office, crying hysterically, and fell to the floor. She had on a t-shirt, jeans, and one sock but no shoes. Ms. Thach asked that someone call 911. After Guderjahn's assistant placed the 911 call, Binh entered the office with the couple's two daughters. He left his daughters with their mother and left the office. After Binh departed, Ms. Thach told Guderjahn what had happened.
Officer Neal Martin of the Vancouver Police Department responded to the 911 call. When he arrived, Ms. Thach came out of the office limping. Officer Martin learned that Binh had already left the complex. Based on the information he received from Ms. Thach and her appearance, Officer Martin radioed to other units to be looking out for Binh's vehicle. The officer then took a more in-depth statement from Ms. Thach.
Ms. Thach told the officer that she had been in an argument with her husband and that the argument had escalated into an assault. She told the officer that during the argument her husband pushed her into a wall and threw her on the ground. After he allowed her to get dressed, he pushed her into a filing cabinet; strangled, punched, and kicked her; and stepped on her face to hold her down while she was on the ground. Ms. Thach also told Officer Martin that Binh had grabbed her leg and pushed it over her head causing her pain.
Officer Martin called an ambulance. While Ms. Thach received medical care, Officer Martin had her fill out a Smith affidavit or domestic violence victim statement. Ms. Thach filled out the first page of the form but Officer Martin filled out the second page because she was receiving medical care. Ms. Thach signed the statement. The domestic violence form contained a statement saying that the victim "certi[fied] or declare[d], under penalty of perjury under the laws of the State of Washington, that the foregoing is true and correct." Ex. 6.
Officer James Azinger located Binh and stopped his vehicle. Officer Azinger approached *787 the car and before he said anything to him, Binh asked whether his being pulled over had something to do with his wife. Officer Azinger asked Binh to step out of the car, arrested him, placed him in the back of the patrol car, and read him his Miranda warnings.[1] Binh chose to speak with Officer Azinger and told him, "I just lost it this time." 2 Report of Proceedings (RP) (Jun. 17, 2003) at 149.
Binh admitted pushing his wife with an open hand to get her to turn around and talk to him. He further stated that his wife fell down on the ground and became angry and that they wrestled on the ground and he tried to gain control of her. Binh was on top while his wife laid face up on the ground. He had his legs straddled over his wife's stomach and he held down her arms.
The State charged Binh with second degree assault  domestic violence and unlawful imprisonment  domestic violence. At trial, the State called Ms. Thach. She stated that she and Binh had been married five years at the time of the assault and that she had been with him since she was 15. Ms. Thach's testimony about the assault was similar to the statement she gave to the police except she testified that Binh had never abused her in the past. The State asked Ms. Thach to identify her written statement. Ms. Thach admitted that she recognized her written statement, that the statement contained her handwriting, that she wrote the statement while in the ambulance, and that she signed the statement under penalty of perjury. The State then sought to admit Ms. Thach's written statement. After some discussion by the parties, the court admitted Ms. Thach's written statement as substantive evidence, but the court also allowed the State to use it to impeach her to the extent that she now asserted Binh had never abused her in the past.
The State then had Ms. Thach read portions of her victim statement where she wrote of other past acts. Ms. Thach tried to explain the discrepancies between her testimony and her statement by stating that she over-exaggerated in her victim's statement.
The State also called Dr. Anita Demlow, Ms. Thach's treating physician, to testify. Dr. Demlow examined Ms. Thach in the emergency room on January 24. She stated that Ms. Thach told her she had been assaulted. Ms. Thach explained to the doctor the events of that day. The State asked, "[w]ere you able to provide a clinical impression or diagnosis of what happened or  as far as what  not what happened as the facts, but  ... what happened to the patient and her injuries and her body?" 1 RP (Jun. 16, 2003) at 32. Dr. Demlow responded that it appeared to her after the examination that what happened to Ms. Thach was true. She also stated that Ms. Thach's examination was consistent with the story she told Dr. Demlow. Binh did not object to the State's question or the answer.
During Officer Martin's testimony, the State asked him whether Ms. Thach appeared angry or vindictive after the assault. Officer Martin responded, "[n]o." 1 RP at 123. Binh did not object to this question or the answer. The State also asked Officer Martin why he had domestic violence victims fill out a written form. The officer explained that studies showed that victims of domestic violence often changed their minds after the abusive episode concluded. The written statement was taken in case the victim later changed his or her statement. Binh did not object to this question or answer.
Officer Martin also testified that he helped Ms. Thach fill out part of her victim's statement. While Ms. Thach received medical care, the officer asked her questions and wrote down her responses. Officer Martin then witnessed Ms. Thach sign the statement.
Binh attempted to introduce the testimony of Song Thach, his sister, as a character witness regarding his peaceful nature. The court found that Binh's family community would not establish his reputation in the community at large. The court denied Binh's offer of character evidence because he was unable to establish the appropriate foundation.
*788 During closing arguments, the prosecutor argued that prior incidents of abuse against Ms. Thach were possible reasons why she attempted to minimize the assault when she testified. In its rebuttal argument, the State also responded to Binh's argument of blaming Ms. Thach for her injuries by pointing out to the jury that he failed to take responsibility for his actions.
At the end of trial, the jury convicted Binh of second degree assault  domestic violence. The jury did not find Binh guilty of unlawful imprisonment  domestic violence. The court sentenced Binh within the standard range.
After the trial, Binh moved for a new trial under CrR 7.5(a)(3) based on newly discovered evidence. He based the motion on the affidavit of Bette Jo Claycamp, Binh's mother-in-law, who explained that Ms. Thach suffered from bipolar disorder. At the time of trial, Ms. Thach was not under treatment for her medical condition. Binh argued that Ms. Thach's mental state at the time of the assault was relevant to her credibility at trial. Binh further argued that since the trial revolved around Ms. Thach's credibility, the newly discovered evidence likely would have changed the trial outcome. The trial court denied the motion for a new trial, stating that Binh knew about Ms. Thach's mental disorder and bipolar condition. Binh now appeals his conviction, raising several errors.

I. Admission of Ms. Thach's Written Statement
Binh argues that the State failed to establish the admissibility of Ms. Thach's written statement under ER 801(d)(1)(i). We disagree.
In State v. Smith, 97 Wash.2d 856, 863, 651 P.2d 207 (1982), the Supreme Court held that if a prior inconsistent statement satisfies the elements of ER 801(d)(1)(i), the statement is admissible as substantive evidence. Under ER 801(d)(1)(i), a court may admit statements of a witness when:
[t]he declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is (i) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.
ER 801(d)(1)(i). Binh contends that Ms. Thach's statement was not made under oath and was not part of a deposition or formal proceeding. Binh's contention inaccurately applies the case law regarding the admissibility of these types of statements.
To determine whether a statement is admissible, the trial court considers the Smith factors. State v. Nelson, 74 Wash.App. 380, 387, 874 P.2d 170, review denied, 125 Wash.2d 1002, 886 P.2d 1134 (1994). Those factors are: (1) whether the witness voluntarily made the statement; (2) whether there were minimal guaranties of truthfulness; (3) whether the statement was taken as standard procedure in one of the four legally permissible methods for determining the existence of probable cause; and (4) whether the witness was subject to cross examination when giving the subsequent inconsistent statement. Smith, 97 Wash.2d at 861-63, 651 P.2d 207. All four factors are met in the present case.
The first factor to consider is whether the witness voluntarily made the statement. Smith, 97 Wash.2d at 861-63, 651 P.2d 207. Officer Martin provided the domestic violence form to Ms. Thach. She then filled out the first page of the form. At trial, Ms. Thach testified that she wrote and signed her statement while seated in an ambulance after the assault.
The second factor to consider is whether there were minimal guarantees of truthfulness. Smith, 97 Wash.2d at 861-62, 651 P.2d 207. In Smith, the police took the victim to a notary and had the victim's statement notarized. Smith, 97 Wash.2d at 858, 651 P.2d 207. In Nelson, the victim's affidavit included the following language: "I have read the attached statement or it has been read to me and I know the contents of the statement." Nelson, 74 Wash.App. at 390, 874 P.2d 170.
In the present case, Ms. Thach testified that she signed her statement under penalty of perjury. Officer Martin also testified that Ms. Thach filled out the first part of the domestic violence form and he assisted her *789 with the final questions as Ms. Thach received medical care. The officer witnessed Ms. Thach sign her statement. From this evidence a reasonable person could find that Ms. Thach's statement carried minimal guarantees of truthfulness.
The third factor is whether the statement was taken as a standard procedure in one of the legally permissible methods for determining the existence of probable cause. Smith, 97 Wash.2d at 862, 651 P.2d 207. The Smith court listed those four methods as: "(1) filing of an information by the prosecutor in superior court; (2) grand jury indictment; (3) inquest proceedings; and (4) filing a criminal complaint before a magistrate." Smith, 97 Wash.2d at 862, 651 P.2d 207 (citations omitted) (quoting State v. Jefferson, 79 Wash.2d 345, 347, 485 P.2d 77 (1971)).
Officer Martin took Ms. Thach's statement as part of a standard procedure for determining probable cause. He testified that obtaining a signed, written victim statement in a domestic violence case was standard procedure. The statement was part of the evidence Officer Martin gathered and forwarded to the prosecutor. He also forwarded police reports to the prosecutor. The prosecutor used all of this information in order to establish probable cause and to determine whether to file an information in the superior court.
The final factor a court considers in determining admissibility is whether the witness was subject to cross-examination when giving the subsequent statement. Smith, 97 Wash.2d at 862, 651 P.2d 207. Here, Binh had the opportunity to cross-examine his wife. The State satisfied all of the Smith factors and the trial court properly admitted Ms. Thach's statement.
Binh also raises the issue of admissibility under the holding set forth recently in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Crawford has no bearing on this case as the Supreme Court stated that the confrontation clause is not implicated when the declarant is available for cross-examination at trial. Crawford, 124 S.Ct. at 1369, n. 9. Ms. Thach appeared at trial and Binh was able to cross-examine her about her statements.

II. Admission of Prior Bad Acts
Binh contends the trial court abused its discretion when it admitted evidence of previous abuse against his wife.
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." ER 404(b); State v. Holmes, 43 Wash.App. 397, 400, 717 P.2d 766, review denied, 106 Wash.2d 1003 (1986). "To admit evidence of other wrongs, the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charge[d], and (4) weigh the probative value against the prejudicial effect." State v. Thang, 145 Wash.2d 630, 642, 41 P.3d 1159 (2002). Here, the court did not comply with these requirements.
We review the trial court's decision to admit or exclude evidence for an abuse of discretion. State v. Stenson, 132 Wash.2d 668, 701, 940 P.2d 1239 (1997), cert. denied, 523 U.S. 1008, 118 S.Ct. 1193, 140 L.Ed.2d 323 (1998). "An abuse of discretion occurs when the trial court bases its decision on untenable grounds or exercises discretion in a manner that is manifestly unreasonable." State v. Zunker, 112 Wash.App. 130, 140, 48 P.3d 344 (2002) (citing State v. Valdobinos, 122 Wash.2d 270, 279, 858 P.2d 199 (1993)), review denied, 148 Wash.2d 1012, 62 P.3d 890 (2003).
The State sought to admit Binh's prior bad acts to rebut Ms. Thach's defense that abuse had never happened before and to explain why during Ms. Thach's testimony she minimized and blamed herself for the assault. The evidence of prior bad acts clearly reflected on Ms. Thach's credibility. But the State, in closing arguments, used the prior bad acts as an explanation for why Ms. Thach recanted her story in her testimony.
Here, the State did not use the prior bad acts solely to show propensity and did not improperly use the evidence of prior bad acts in its closing arguments but instead illustrated *790 that the prior incidents were possible reasons why Ms. Thach took the stand and attempted to minimize the assault and other incidents of abuse. But, nonetheless, the trial court should have followed the correct procedure and done an examination on the record with a proper balancing test.
Evidentiary errors under ER 404 are not of constitutional magnitude, so we must determine whether the trial outcome would have differed if the error had not occurred. State v. Robtoy, 98 Wash.2d 30, 653 P.2d 284 (1982); State v. Jackson, 102 Wash.2d 689, 689 P.2d 76 (1984). We find it would not because Ms. Thach testified to all of the elements of the offense, verified that she had made the statement to the police, made the same statement of assault to the treating physician, and had injuries consistent with her physical examination in the emergency room. Thus, although the court erred, the error was harmless.

III. Improper Testimony
Binh asserts that the statements by Dr. Demlow and Officer Martin of their belief in Ms. Thach's initial statements that he assaulted her improperly invaded the province of the jury.

A. Dr. Demlow's Testimony
On January 24, 2003, Dr. Demlow treated Ms. Thach in the emergency room. She made a record of the bruised areas and places where Ms. Thach complained of pain. At trial, the State asked Dr. Demlow the following question: "[w]ere you able to provide a clinical impression or diagnosis of what happened or  as far as what  not what happened as the facts, but  ... what happened to the patient and her injuries and her body?" 1 RP at 32. The doctor responded, "I guess it appeared to me, after examining her, that it was likely that what she had told me had happened to her was true. And her exam was consistent with the story that I received from her about the types of injuries that were inflicted on her." 1 RP at 32. Thach did not object to the State's question or the doctor's answer.
Improper opinion testimony violates the defendant's right to a jury trial and invades the fact-finding province of the jury. State v. Dolan, 118 Wash.App. 323, 329, 73 P.3d 1011 (2003). A witness is not allowed to give an opinion on another witness's credibility. State v. Carlson, 80 Wash.App. 116, 123, 906 P.2d 999 (1995). Because improper opinion testimony violates a constitutional right, a defendant may generally raise the issue for the first time on appeal. State v. Saunders, 120 Wash.App. 800, 811, 86 P.3d 232 (2004). Under RAP 2.5(a)(3), we may consider a manifest error affecting a constitutional right raised for the first time on appeal.
Where a defendant contends a manifest error occurred at the trial level, we review the error employing a four-part test. State v. Lynn, 67 Wash.App. 339, 345, 835 P.2d 251 (1992). First, we determine whether the alleged error is a constitutional error. Second, we determine whether the alleged error is manifest. Lynn, 67 Wash.App. at 345, 835 P.2d 251. Key to this determination is "a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case." Lynn, 67 Wash.App. at 345, 835 P.2d 251. Third, if we find the alleged error to be manifest, then we must address the merits of the constitutional issue. Lynn, 67 Wash.App. at 345, 835 P.2d 251. Finally, if we determine that a constitutional error occurred, then we undertake a harmless error analysis. Lynn, 67 Wash.App. at 345, 835 P.2d 251.
As previously stated, improper opinion testimony invades the province of the jury and thus violates a constitutional right of the defendant. Dolan, 118 Wash.App. at 329, 73 P.3d 1011. Thus, we need not address the first three points in the test. Instead, we now must determine whether the admission of the improper opinion testimony was a harmless error. We use the harmless error test set forth in State v. Guloy, 104 Wash.2d 412, 425, 705 P.2d 1182 (1985), cert. denied, 475 U.S. 1020, 106 S.Ct. 1208, 89 L.Ed.2d 321 (1986), to determine if a constitutional error is harmless. Under that test "[a] constitutional error is harmless if the appellate court is convinced beyond a reasonable *791 doubt that any reasonable jury would have reached the same result in the absence of the error." Guloy, 104 Wash.2d at 425, 705 P.2d 1182. We employ the "overwhelming untainted evidence" test to determine if the error was harmless. Guloy, 104 Wash.2d at 426, 705 P.2d 1182. Under the overwhelming evidence test, the court examines whether the untainted evidence is so overwhelming that it leads necessarily to a finding of guilt. State v. Carlin, 40 Wash.App. 698, 703, 700 P.2d 323 (1985).
The evidence here is overwhelming. Here, the victim testified to the injuries and the assault on her, the court admitted her statement as substantive evidence of the injuries and the assault by Binh, and she made a statement to the physician consistent with her injuries and corroborating the assault. Any reasonable jury would have reached the same result in the absence of this error.

B. Testimony of Officer Martin
Binh asserts that the State improperly asked Officer Martin to express his opinion regarding Ms. Thach's mental state at the time of her statements to the police. He also argues that Officer Martin made a comment on Ms. Thach's credibility when he explained why the police department takes written statements in domestic violence cases. We disagree.

1. Mental State of Ms. Thach
Here, the State asked Officer Martin if he recalled Ms. Thach being "angry or vindictive" on the day of the assault. 1 RP at 123. Officer Martin responded "[n]o." 1 RP at 123. This question was improper; but subject to the same analysis as the opinion testimony of Dr. Demlow. The error was harmless under a constitutional standard.

2. Written Victim Statements
Binh contends that the trial court erred by admitting Officer Martin's testimony regarding why the police department took written statements from domestic violence victims. Binh failed to object. Thus, this issue is not reviewable unless it is a manifest error of constitutional magnitude. RAP 2.5(a)(3).
The State asked Officer Martin to discuss why the police collected a written statement from domestic violence victims. Officer Martin referred to a study showing that many women recant their statements at trial because of fear, further abuse, or financial difficulties. Division One held in State v. Grant, 83 Wash.App. 98, 107, 920 P.2d 609 (1996), that victims of domestic violence often attempt to appease their abusers by changing their earlier statements at trial in an attempt to avoid further violence. Although this statement is no doubt true, it is improper in the context of a trial where the victim has testified and the State is impeaching her. It becomes an opinion on the credibility of the victim's courtroom testimony. As we pointed out in Carlson, this would be a comment on the witness's conduct, i.e., credibility, at the time of trial  which neither an expert nor a lay person's opinion is permissible. Carlson, 80 Wash.App. at 123, 906 P.2d 999. But this error is subject to the same analysis for constitutional harmless error as the others. The error is harmless in light of the testimony of the victim as to the elements of the assault by her husband, her statement to the police, and the physical findings of the physician. The evidence was overwhelming; this is not a manifest constitutional error under RAP 2.5.
We do not minimize these errors when we find them harmless. Nor do we approve of the methods used or the lack of control of the witnesses' testimony where constitutional rights are at issue.

IV. Exclusion of Character Evidence
Binh argues that the trial court erred by not allowing him to introduce character witness. We disagree.
At trial, Binh sought to introduce reputation testimony that he was peaceful and nonviolent. On the second day of trial, Binh announced that his sister, Song Thach, was available to testify regarding his character. The court ruled that Binh's sister could not testify to establish his reputation in the community.
*792 In order to offer reputation testimony, a witness must lay a foundation establishing that the subject's reputation is based on perceptions in the community. ER 608(a). A witness's personal opinion is not sufficient to lay a foundation. State v. Land, 121 Wash.2d 494, 500, 851 P.2d 678 (1993); ER 608 cmt. Our Supreme Court has held that a valid community must be "neutral enough [and] generalized enough to be classed as a community." State v. Lord, 117 Wash.2d 829, 874, 822 P.2d 177 (1991) (quoting Parker v. State, 458 So.2d 750, 753-54 (Fla.1984), cert. denied, 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985)), cert. denied, 506 U.S. 856, 113 S.Ct. 164, 121 L.Ed.2d 112 (1992). We review a trial court's decision to exclude evidence for an abuse of discretion. Land, 121 Wash.2d at 500, 851 P.2d 678.
In the present case, Binh sought to establish his peacefulness within the community of his family. No case law exists supporting the proposition that a family constitutes a community for purposes of character evidence. Under the holding in Lord, a family is not "neutral enough [and] generalized enough to be classed as a community." Lord, 117 Wash.2d at 874, 822 P.2d 177. Defense counsel only had Song's testimony to establish that Binh was peaceful and nonviolent. Further, as the court noted, defense counsel was unable to establish the proper foundation to admit Song's testimony. The trial court did not err by failing to allow Song to testify.

V. Prosecutorial Misconduct
Binh contends the prosecutor committed misconduct during closing argument because he appealed to the jury's sympathy and argued that Binh refused to take responsibility for the assault against his wife. The record does not support these assertions.
Prosecutorial misconduct may violate a defendant's due process right to a fair trial. State v. Charlton, 90 Wash.2d 657, 664, 585 P.2d 142 (1978). In order to prevail on an allegation of prosecutorial misconduct, a defendant must show both improper conduct and prejudicial effect. State v. Pirtle, 127 Wash.2d 628, 672, 904 P.2d 245 (1995), cert. denied, 518 U.S. 1026, 116 S.Ct. 2568, 135 L.Ed.2d 1084 (1996). A defendant establishes prejudice only if there is a substantial likelihood the instances of misconduct affected the jury's verdict. State v. Evans, 96 Wash.2d 1, 5, 633 P.2d 83 (1981). Courts afford a prosecutor wide latitude in closing argument to draw and express reasonable inferences from the evidence. State v. Millante, 80 Wash.App. 237, 250, 908 P.2d 374 (1995), review denied, 129 Wash.2d 1012, 917 P.2d 130 (1996). A prosecutor, however, may not appeal to the jury's passions or prejudice. State v. Claflin, 38 Wash.App. 847, 850-51, 690 P.2d 1186 (1984), review denied, 103 Wash.2d 1014 (1985).
We review a prosecutor's comments during closing argument "in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury." State v. Brown, 132 Wash.2d 529, 561, 940 P.2d 546 (1997) (quoting State v. Russell, 125 Wash.2d 24, 85-86, 882 P.2d 747 (1994), cert. denied, 514 U.S. 1129, 115 S.Ct. 2004, 131 L.Ed.2d 1005 (1995)), cert. denied, 523 U.S. 1007, 118 S.Ct. 1192, 140 L.Ed.2d 322 (1998). Failing to object waives the objection unless the comment was so flagrant or ill-intentioned that it causes an enduring prejudice that could not be cured by instruction. Brown, 132 Wash.2d at 561, 940 P.2d 546. A new trial is not necessary if the trial court could have cured the misconduct by giving a curative instruction but the defendant did not request one. Brown, 132 Wash.2d at 561, 940 P.2d 546.
Binh's first example of prosecutorial misconduct involves the "golden rule." Typically, specific references by counsel to allusions, such as "`urging the jurors to place themselves in the position of one of the parties to the litigation, or to grant a party the recovery they would wish themselves if they were in the same position,'" is an improper argument. Adkins v. Aluminum Co. of Am., 110 Wash.2d 128, 139, 750 P.2d 1257, 756 P.2d 142 (1988) (quoting JACOB STEIN, CLOSING ARGUMENT § 60, at 159 (1985)). Courts find such arguments improper because it encourages jurors to depart from neutrality *793 and decide the case on the basis of personal interest rather than on the evidence. Adkins, 110 Wash.2d at 139, 750 P.2d 1257. Reversal of a conviction is not automatic where a golden rule argument was made; its prejudicial effect can be removed if the trial court sustains a timely objection and instructs the jury to disregard it. Adkins, 110 Wash.2d at 141-42, 750 P.2d 1257.
In this case, Binh asserts that the prosecutor made a golden rule argument but he failed to cite to the record where the argument occurred. In reviewing the prosecutor's closing argument, we find references to "you" but, as the State argues in its brief, "you" was used rhetorically and not specifically to invoke sympathy from the jury. Br. of Resp't at 24. In none of the uses did Binh object. The prosecutor's comments did not invoke the golden rule as they did not ask the jury to put itself in the position of the victim.
The second alleged example of prosecutorial misconduct involves the prosecutor's comment that Binh failed to take responsibility. Binh argues that the prosecutor attempted to comment on Binh's silence since he did not take the stand or present evidence concerning the facts of the case. This argument is also meritless.
The prosecutor's statement that Binh failed to "take responsibility" for the assault against his wife was in response to defense counsel's closing argument. Br. of Resp't at 25. Defense counsel attempted to place much of the blame for the assault on Ms. Thach. The prosecutor's comment was not a comment on Binh's failure to take the stand or present evidence.
Binh fails to demonstrate how the prosecutor's statements prejudicially affected his case. Thus his claims of prosecutorial misconduct fail.

VI. Motion for a New Trial
Binh contends that the trial court erred when it denied his motion for a new trial based on newly discovered evidence. We disagree.
We review a trial court's denial of a motion for new trial for manifest abuse of discretion. State v. Hutcheson, 62 Wash.App. 282, 297, 813 P.2d 1283 (1991), review denied, 118 Wash.2d 1020, 827 P.2d 1012 (1992). Under CrR 7.5(a)(3), a court in its discretion may grant a new trial "when it affirmatively appears that a substantial right of the defendant was materially affected ... [by][n]ewly discovered evidence material for the defendant, which [he] could not have discovered with reasonable diligence and produced at the trial." If the newly discovered evidence is merely cumulative or impeaching or will not change the trial result, it does not justify granting a new trial. Hutcheson, 62 Wash.App. at 297, 813 P.2d 1283.
A defendant must establish "that the evidence (1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching." State v. Williams, 96 Wash.2d 215, 223, 634 P.2d 868 (1981). The absence of any one of the five factors is grounds for the denial of a new proceeding. Williams, 96 Wash.2d at 223, 634 P.2d 868.
Binh asserts that evidence that Ms. Thach suffered from bipolar disorder warranted a new trial. In making its ruling, the trial court stated that Binh knew about Ms. Thach's mental disorder, thus it denied his motion for a new trial.
The record before us reveals no abuse of discretion. Binh failed to establish all five elements necessary for a new trial. The information regarding Ms. Thach's mental disorder was not newly discovered evidence. Binh knew at the time of trial that his wife suffered from the disease and he even admitted this knowledge to the court. The trial court properly denied Binh's motion for a new trial.

VII. Ineffective Assistance of Counsel
Binh argues he received ineffective assistance of counsel because defense counsel (1) failed to object to improper opinion evidence; (2) did not propose limiting instructions on the use of prior bad acts; and (3) failed to object to multiple instances of prosecutorial *794 misconduct during closing argument. His argument is meritless.
Ineffective assistance of counsel is "a mixed question of law and fact" and is reviewed by this court de novo. Strickland v. Washington, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on a claim of ineffective assistance of counsel, the defendant must show: (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
Binh first contends the admission of Ms. Thach's written testimony shows the ineffectiveness of his defense counsel. But as we previously discussed, Ms. Thach's written victim statement satisfied the necessary criteria for admissibility. Binh also does not discuss how the admission of this statement prejudiced his case.
Second, Binh argues defense counsel was ineffective because she failed to propose limiting instructions on the use of prior bad acts evidence. Here, defense counsel objected to the prior bad acts evidence but the court overruled the objection. Although defense counsel failed to propose a limiting instruction, this was harmless.
The third contention involves the opinion testimony of Dr. Demlow and Officer Martin. But as noted above, the error was harmless.
Finally, the prosecutor's comments did not rise to the level of misconduct because they were not ill-intentioned and flagrant. Moreover, defense counsel's failure to object had no effect on his case. Binh fails to show ineffective assistance of counsel.[2]State v. Thomas, 109 Wash.2d 222, 226, 743 P.2d 816 (1987).
Affirmed.
We concur: QUINN-BRINTNALL, C.J., and HOUGHTON, J.
NOTES
[1] Miranda v. Ariz., 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] In his assignments of error, Binh raised assignment of error 9 but he did not dedicate any discussion to it in his brief. When a party fails to follow RAP 10.3(a)(5), this court does not consider its unsupported arguments. State v. Marintorres, 93 Wash.App. 442, 452, 969 P.2d 501 (1999).