FILED
COURT OF APPEALS
DIVISION II

2013 APR 23 PM 12: 01

STATE OF WASHINGTON

BY_____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42233-6-II |
| Respondent, | consolidated with |
| | No. 42236-1-II |
| v. | |
| JERRY ALLEN ANDERSON, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. — Jerry Anderson appeals his convictions for violation of a no contact order and fourth degree assault. He argues that the trial court erred by (1) admitting written statements by the victim and two witnesses as prior inconsistent statements because they were not given under oath subject to penalty of perjury and were not made at an "other proceeding;" and (2) including a prior class C felony conviction in his offender score and criminal record. Because the trial court found that the witnesses were aware that their signed statements included the "penalty of perjury" language and because the statements were used in the standard process for determining probable cause, we affirm the trial court's decision to admit the written statements into evidence as prior inconsistent statements. Additionally, Anderson concedes that even if his prior class C felony conviction is removed his offender score would remain unchanged. The State's failure to provide reliable evidence establishing the accuracy of Anderson's offender score is harmless. We affirm.

FACTS

On March 25, 2009, Anderson's fiancée, Lisa Garner, contacted the Longview Police Department to report that Anderson had physically assaulted her. Officer Leak arrived at Garner's home shortly thereafter, at which time Garner stated that Anderson had choked her.

Anderson was arrested and issued a citation for assault, and the Longview Municipal Court subsequently entered a no contact order prohibiting Anderson from contacting Garner.

On May 25, 2009, while the no contact order was still in effect, Anderson attended a party with Garner at their Longview home. Garner's family members were also in attendance, including her sister, Crystal Alvarado, and her brother-in-law, Eric Smith. Anderson attempted to leave the party. Garner did not want Anderson to leave, so she stood between him and the door. Anderson pushed past Garner and went upstairs to get his jacket. Again Garner stood in the door to prevent Anderson from leaving. Anderson pushed Garner to the ground and left the house. At some point during this dispute, Anderson got on top of Garner and held her to the ground.

The next day, Garner called her daughter, Tiffany Denton, and told her that she had been in a fight with Anderson and that she needed to go to the hospital. Denton took her to the hospital and called the police. Dr. Martin Gillen examined Garner at the hospital and noted marks on her neck consistent with strangulation.

While at the hospital, Garner called Alvarado and asked Alvarado to meet her there. Alvarado and Smith arrived at the hospital where they discussed the previous day's events with Garner. The police took written statements from Garner, Alvarado, and Smith, all of whom wrote their names in the blank of the perjury statement located at the bottom of each page. Officer Charles Meadows took a second written statement from Garner on May 27, 2009 using the same form. Garner's written statements said that Anderson body slammed and choked her in their bedroom. Alvarado's and Smith's written statements said that they each witnessed Anderson pin down and choke Garner in the garage.

On January 20, 2011, the State charged Anderson with two counts of second degree assault and violation of a no contact, protection, or restraining order. On April 19, the State further charged Anderson with second degree assault (domestic violence), second degree theft (domestic violence), and obstructing a law enforcement officer. Anderson made a pretrial motion to exclude Garner's, Smith's, and Alvarado's written statements, claiming they were inadmissible hearsay. The trial court ruled that all of the statements were admissible.

On May 20, the jury found Anderson guilty of violating a no contact order under RCW 26.50.110(4), fourth degree assault for his altercation with Garner on May 26, 2009 under RCW 9A.36.041(1), and obstructing a law enforcement officer under RCW 9A.76.020(1). The trial court calculated Anderson's offender score at eight and sentenced him to 60 months in prison with 12 months' community custody for violating a no contact order and two concurrent 30-day sentences for the fourth degree assault and obstruction of justice convictions.[1] Anderson appeals.

## ANALYSIS

### I. ADMISSIBILITY OF PRIOR INCONSISTENT STATEMENTS

Anderson argues that the trial court abused its discretion by admitting Garner's, Smith's, and Alvarado's written statements as prior inconsistent statements because the statements do not meet ER 801(d)(1)(i) requirements. Because each statement satisfies ER 801(d)(1)(i) requirements, Anderson's arguments are not persuasive.

---

[1] Anderson's criminal history includes a September 8, 1997 second degree theft conviction and a conviction for possession of a controlled substance committed on June 4, 2003. There is no information in the record about how long Anderson was confined after his 1997 conviction.

A witness's prior inconsistent statement is admissible as substantive evidence if it satisfies the elements of ER 801(d)(1)(i). Under ER 801(d)(1)(i), a prior written statement qualifies as nonhearsay evidence if "[t]he declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is (i) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." Anderson concedes that Garner, Smith, and Alvarado testified at trial and were subject to cross examination concerning their statements. It is also undisputed that Garner's, Smith's, and Alvarado's trial testimony was inconsistent with their prior written statements to police, so the two remaining issues are whether the statements were given under oath subject to the penalty of perjury and whether the statements were given at an "other proceeding."

A.      Standard of Review

Decisions involving evidentiary issues lie largely within the trial court's sound discretion and will not be reversed on appeal unless it is clearly shown that the trial court exercised its discretion in a manifestly unreasonable way, or on untenable grounds, or for untenable reasons. *State v. Castellanos*, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997); *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). The trial court is entrusted with determining whether sufficient facts have been proven on preliminary questions addressing the admission of evidence. *State v. Guloy*, 104 Wn.2d 412, 419-20, 705 P.2d 1182 (1985). When the admissibility of evidence turns on a witness's credibility, the fact finder—in this case the trial court—measures witness credibility. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). We do not review credibility determinations on appeal. *Camarillo*, 115 Wn.2d at 71.

4

B.      Oath Requirement

Anderson argues that Garner's, Smith's, and Alvarado's statements were not made under oath subject to the penalty of perjury as ER 801(d)(1)(i) requires. Because the statements each satisfy RCW 9A.72.085 requirements, Anderson's arguments are not persuasive.

A declarant's prior written statement will meet the oath requirement if the declarant actually takes an oath or his written statement complies with RCW 9A.72.085. *State v. Sua*, 115 Wn. App. 29, 48, 60 P.3d 1234 (2003). Under RCW 9A.72.085, an unsworn written statement will satisfy the oath requirement if it:

(1) Recites that it is certified or declared by the person to be true under penalty of perjury;
(2) Is subscribed by the person;
(3) States the date and place of its execution; and
(4) States that it is so certified or declared under the laws of the state of Washington.

In other words, an unsworn written statement will satisfy the oath requirement if it is signed and contains language such as, "I certify (or declare) under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct." *State v. Nieto*, 119 Wn. App. 157, 161, 79 P.3d 473 (2003) (quoting RCW 9A.72.085). But, it is not enough for a declarant to simply sign a document declaring that it is being made under penalty of perjury. Rather, the declarant must understand that their statement is being made under penalty of perjury. *State v. Nelson*, 74 Wn. App. 380, 390, 874 P.2d 170 (1994).

Here, Anderson argues that the statements do not satisfy the oath requirements because the witnesses all testified that they did not read or understand the perjury language in their statements. The trial judge did not find this testimony credible. The Longview Police Department Statement form upon which the statements were executed includes a clause stating:

"I _____ have read the above statement and I certify and declare it to be true and correct under the penalty of perjury under the laws of the State of Washington."

Exs. 13, 14, 15, 16, & 17. Garner, Smith, and Alvarado entered their names into the blank on each page of their written statements and signed their names on the signature line beneath each statement. They each listed the date and location where they gave their statements on the bottom of each page. At trial, they admitted that they made the statements, and Alvarado stated that it would seem odd for her to have placed her name in the blank without having read the perjury statement. Garner, Smith, and Alvarado gave their statements under the penalty of perjury, they subscribed the statements themselves, they included specific information as to the date and place of the execution of the statement, and they made the statements under the laws of the State of Washington. The statements comply with RCW 9A.92.085.

Although Garner, Smith, and Alvarado testified that they did not understand that their statements were made under penalty of perjury, the trial court did not find this testimony credible.[2] We give deference to the trial court's credibility determinations and hold that Garner's, Smith's, and Alvarado's statements all satisfy the ER 801(d)(1)(i) oath requirement.

C.    Other Proceeding Requirement

Anderson further argues that the statements were not given at an "other proceeding" as ER 801(d)(1)(i) requires because they do not contain minimal guaranties of truthfulness and they were not used to determine probable cause. Because the statements were made under oath

_____

[2] The trial court discussed the admissibility of Garner's statements at length during pretrial proceedings, and determined that the statements were admissible. But, the trial court does not discuss the admissibility of Smith's and Alvarado's statements beyond overruling objections to their admission. Because Smith's and Alvarado's statements were executed at the same time as one of Garner's statements, regarding the same events, and under the same conditions, it is apparent that the trial court extended the same reasoning for Garner's statements to the other two statements.

6

subject to penalty of perjury and were used to determine probable cause, Anderson's argument fails.

To determine if a prior inconsistent statement was given at an "other proceeding", courts consider the four *Smith* factors, which are: (1) whether the witness voluntarily made the statement; (2) whether there are minimal guaranties of truthfulness; (3) whether the statement was taken as standard procedure in one of the four legally permissible methods for determining the existence of probable cause; and (4) whether the witness was subject to cross examination when giving the subsequent inconsistent statement. *State v. Smith*, 97 Wn.2d 856, 861-63, 651 P.2d 207 (1982). "In determining whether evidence should be admitted, reliability is the key." *Smith*, 97 Wn.2d at 861. Courts should consider that the inconsistent statement is more likely to be true than the testimony at trial because it was made closer to the events with less chance of being influenced by fear or forgetfulness. *Smith*, 97 Wn.2d at 861. The first and fourth *Smith* factors are straightforward and are not in dispute in this case. The second factor, minimal guaranties of truthfulness, is satisfied if the statement was attested to before a notary, given under oath, and subject to penalty of perjury. *Smith*, 97 Wn.2d at 862. Where a statement is made under oath and subject to perjury, it is not required that the statement also be notarized. *State v. Binh Thach*, 126 Wn. App. 297, 308, 106 P.3d 782 (2005) (holding that a declarant's statement had minimal guaranties of truthfulness even though it was not notarized); *Nelson*, 74 Wn. App. at 389-90 (applying the same analysis to the oath requirement of ER 801(d)(1)(i) as the minimal guaranties of truthfulness requirement from *Smith*).

The third *Smith* factor is met if the statement was taken as part of a standard procedure for filing an information by the prosecutor in superior court, a grand jury indictment, inquest proceedings, or filing a criminal complaint before a magistrate. *Binh Thach*, 126 Wn. App. at

309 (quoting *Smith*, 97 Wn.2d at 862). Where an officer gathers written statements related to a domestic violence case and forwards those statements to the prosecutor and where the prosecutor uses those statements to establish probable cause, the third *Smith* factor is met. *Binh Thach*, 126 Wn. App. at 309.

Anderson concedes that Garner's Smith's, and Alvarado's written statements satisfy the first and fourth criteria. Therefore, the remaining issues are whether Garner's, Smith's, and Alvarado's statements have minimal guaranties of truthfulness in satisfaction of the second prong and whether they were used to determine the existence of probable cause in satisfaction of the third prong.

First, the statements have minimal guaranties of truthfulness because they were made under oath and subject to the penalty of perjury. The statements were made under oath because they satisfy the RCW 9A.72.085 elements. They were made under penalty of perjury because each party completed the perjury statement, and the trial court determined that their claims of ignorance were not credible. Therefore, the statements have minimal guaranties of truthfulness in satisfaction of the second *Smith* factor.

Next, the statements were taken as standard procedure in one of the four legally permissible methods for determining the existence of probable cause; therefore, they satisfy the third *Smith* factor. *Binh Thach*, 126 Wn. App. at 308-09 (emphasizing that *Smith* statements must be taken as part of a standard procedure). The investigating officer who took Smith's statement, Meadows, testified that he sent Garner's, Smith's, and Alvarado's statements to the prosecutor and used those statements to complete a statement of probable cause. We held in *Binh Thach* that similar use of a victim's statement by an officer and prosecutor satisfied the third *Smith* factor, and the same reasoning applies here. *See* 126 Wn. App. at 309.

II.    OFFENDER SCORE AND CRIMINAL HISTORY

Anderson also argues that his 1997 class C felony conviction was washed out under RCW 9.94A.525(2)(c), and, therefore, it was improperly included in his criminal history and offender score. Because Anderson's offender score and sentence remain the same whether or not the class C felony is included in his offender score, the State's failure to reliably establish Anderson's offender score was harmless.

A defendant may challenge an illegal or erroneous sentence for the first time on appeal. *State v. Rivers*, 130 Wn. App. 689, 697, 128 P.3d 608 (2005). The State has the burden to provide reliable evidence to establish the accuracy of an offender score calculation. *State v. Wilson*, 113 Wn. App. 122, 136, 52 P.3d 545 (2002). Where a trial court incorrectly calculates the standard sentencing range, as established by the defendant's offender score, the remedy is to remand for resentencing unless the record clearly indicates that the sentencing court would have imposed the same sentence anyway. *State v. Parker*, 132 Wn.2d 182, 192-93, 937 P.2d 575 (1997). Under RCW 9.94A.525(2)(c), convictions only wash out if the offender remains in the community without committing any crime that subsequently results in a conviction for the specified period, which in this case is five years.

In this case, while there were over five years between Anderson's 1997 conviction and 2003 crime, we cannot tell when he was released from custody for the 1997 conviction and thus cannot tell if he spent five crime-free years in the community. Therefore, the State failed to provide reliable evidence establishing the accuracy of Anderson's offender score. But, Anderson concedes that even if his offender score were changed to reflect the removal of his 1997 class C felony conviction, his offender score would remain at eight and his sentence would remain unchanged. Because the State's error was harmless, Anderson's argument fails.

9

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Penoyar, J.

We concur:

_____
Van Deren, J.

_____
Worswick, C.J.