FILED
COURT OF APPEALS
DIVISION II

2014 JUL -1 AM 8:49

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44117-9-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| SHELLY FAIRMAN, | |
| Appellant. | |

BJORGEN, J. — A jury returned verdicts finding Shelly Fairman guilty of unlawful possession of a controlled substance with intent to deliver (methamphetamine), unlawful possession of a controlled substance (methamphetamine), and possession of 40 grams or less of marijuana.[1] Fairman appeals her convictions, asserting that (1) the trial court's unwitting possession jury instruction misstated the burden of proof, (2) the prosecutor committed misconduct during its closing arguments, and (3) her defense counsel was ineffective for failing to object to the trial court's unwitting possession jury instruction and for failing to object to the prosecutor's improper closing argument. We affirm.

---

[1] At sentencing, the trial court vacated Fairman's conviction of unlawful possession of a controlled substance (methamphetamine).

FACTS

On May 20, 2012, police arrested Shelly Fairman and Fairman's niece, Sarai Jones, for shoplifting from a Longview Goodwill store. After police transported Fairman and Jones to the Cowlitz County Jail, Corrections Officer Dave Crayne performed an inventory search of their belongings. In Fairman's purse, Crayne found methamphetamine, marijuana, digital scales, glass pipes, and $1,000 in cash.

The State charged Fairman with third degree theft, possession of under 40 grams of marijuana, possession of a controlled substance with intent to deliver (methamphetamine), and possession of a controlled substance (methamphetamine).[2] At trial, Jones testified that the methamphetamine, marijuana, digital scales, and glass pipes belonged to her and that, before entering the Goodwill store, she had placed those items in Fairman's purse without Fairman's knowledge.

Over the State's objection, the trial court instructed the jury on the affirmative defense of unwitting possession. At the start of its closing argument, the prosecutor stated:

> So we don't really have to prove much of anything. We know that the Defendant possessed methamphetamine and we know that the Defendant possessed marijuana, and that [the] possession was done here in Cowlitz County, State of Washington, and it was done on May 20th, 2012. Pretty simple.

Report of Proceedings (RP) at 229. The prosecutor also argued at closing that the jury should not find Jones's testimony credible, stating:

> She knew what was in there, yet she couldn't describe it. Two months later she says, well, it was just a black cross.
> Yeah, there was a black cross, and I'll guarantee you after three months there's certainly a conversation between the two of them that could say, hey, take

---

[2] Fairman pleaded guilty to third degree theft before trial.

2

a look at this evidence. The methamphetamine bag said black cross, it looks like a black cross on there. That was it, it's all that she described. And then today she came in here and she said, well, there's number ones on there and there's black crosses.
And this story has just grown.

RP at 233. Additionally, during closing argument the prosecutor referred to Jones as Fairman's "so-called niece." RP at 231.

The jury returned verdicts finding Fairman guilty of unlawful possession of a controlled substance with intent to deliver (methamphetamine), unlawful possession of a controlled substance (methamphetamine), and possession of 40 grams or less of marijuana. The trial court vacated Fairman's unlawful possession of a controlled substance (methamphetamine) conviction at sentencing. Fairman timely appeals her convictions.

ANALYSIS

I. UNWITTING POSSESSION JURY INSTRUCTION

Fairman first contends that the trial court's unwitting possession jury instruction improperly shifted the burden to the defense to disprove the intent element of possession of a controlled substance with intent to deliver. We disagree.

We review challenged jury instructions de novo. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). Jury instructions must inform the jury that the State bears the burden of proving beyond a reasonable doubt each essential element of a criminal offense. *State v. Peters*, 163 Wn. App. 836, 847, 261 P.3d 199 (2011). A trial court commits reversible error by "instruct[ing] the jury in a manner that would relieve the State of this burden." *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995). In general, "jury instructions are sufficient when,

3

read as a whole, they accurately state the law, do not mislead the jury, and permit each party to argue its theory of the case." *State v. Teal*, 152 Wn.2d 333, 339, 96 P.3d 974 (2004).

Unwitting possession is a judicially-created affirmative defense that was designed to ameliorate the harshness of the strict liability offense of unlawful possession of a controlled substance. *State v. Bradshaw*, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004); *State v. Balzer*, 91 Wn. App. 44, 67, 954 P.2d 931 (1998). "To establish the defense, the defendant must prove, by a preponderance of the evidence, that his or her possession of the unlawful substance was unwitting." *Balzer*, 91 Wn. App. at 67.

When used as an affirmative defense to an unlawful possession of a controlled substance charge, an unwitting possession jury instruction does not improperly shift the burden of proof. *Bradshaw*, 152 Wn.2d at 538. Unwitting possession is not, however, an affirmative defense to the crime of possession of a controlled substance with intent to deliver because "[i]t is impossible for a person to intend to . . . deliver a controlled substance without knowing what he or she is doing." *State v. Sims*, 119 Wn.2d 138, 142, 829 P.2d 1075 (1992).

Here, the trial court's unwitting possession jury instruction tracked 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 52.01, at 1007 (3d edition 2008), stating:

> A person is not guilty of possession of a controlled substance if the possession is unwitting. Possession of a controlled substance is unwitting if a person did not know that the substance was in her possession or did not know the nature of the substance.
> The burden is on the defendant to prove by a preponderance of the evidence that the substance was possessed unwittingly. Preponderance of the evidence means that you must be persuaded, considering all of the evidence in the case, that it is more probably true than not true.

Clerk's Papers (CP) at 84. Fairman does not argue that the trial court erred by instructing the jury on the affirmative defense of unwitting possession, nor does she argue that the instruction's language was erroneous. Rather, Fairman argues that the trial court's failure to clarify to the jury that the unwitting possession defense applied only to the unlawful possession of a controlled substance charge, and not to the unlawful possession of a controlled substance with intent to deliver charge, "left jurors free to assume that the defense applied to the possession with intent charge." Br. of Appellant at 10.

Fairman's argument, however, overlooks language in the trial court's unwitting possession jury instruction that states, "A person is not guilty of *possession of a controlled substance* if the possession is unwitting." CP at 84 (emphasis added). This language clearly and unequivocally informed the jury that the unwitting possession defense applied only to the *possession of a controlled substance* charge and, thus, the trial court was not required to provide any further clarifying instructions. *Teal*, 152 Wn.2d at 339. Moreover, the trial court's jury instructions, when "read as a whole," clearly informed the jury that, to convict Fairman of unlawful possession of a controlled substance with intent to deliver, the State had to prove beyond a reasonable doubt the essential element that Fairman intended to deliver a controlled substance. *Teal*, 152 Wn.2d at 339; CP at 75, 80. Nothing in the trial court's unwitting possession jury instruction negated the State's burden in this regard.

Fairman also argues that the sequence of the trial court's instructions "exacerbated the risk that the jury would misunderstand the burden of proof." Br. of Appellant at 10. This argument is unavailing as we have determined the unwitting possession jury instruction clearly informed the jury that the affirmative defense applied only to the unlawful possession of a

controlled substance charge. Additionally, we presume that juries follow a trial court's instructions and, here, the trial court provided the jury with an instruction that stated in part, "The order of these instructions has no significance as to their relative importance. . . . During your deliberations, you must consider the instructions as a whole." CP at 72. Because this instruction directed the jury to not place any emphasis on the sequence of jury instructions and to consider the jury instructions as a whole, Fairman's contention with the jury instructions' sequence fails. Accordingly, we hold that the trial court's unwitting possession jury instruction did not shift the burden on Fairman to disprove the essential element of intent to deliver.

## II. PROSECUTORIAL MISCONDUCT

Next, Fairman contends that the prosecutor committed misconduct during closing argument. Specifically, she asserts that the prosecutor misled the jury on the State's burden of proof by telling the jury, "So we don't really have to prove much of anything." RP at 229. We disagree that this was improper. Fairman also asserts that the prosecutor improperly expressed a personal opinion on witness credibility by referring to Jones as Fairman's "so-called niece," and by stating, "I'll guarantee you after three months there's certainly a conversation between the two of them that could say, hey, take a look at this evidence." RP at 231, 233. We hold that these statements were improper, but that Fairman waived any error.

A defendant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). Prejudice exists when there is a substantial likelihood that the misconduct affected the verdict. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). Where, as here, a defendant fails to object to the prosecutor's improper statements at trial, such failure constitutes a waiver of prosecutorial

6

misconduct claims unless the prosecutor's statements were "so flagrant and ill-intentioned" that it caused an "enduring and resulting prejudice" incurable by a jury instruction. *State v. Stenson*, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997). In determining whether a prosecutor's misconduct warrants reversal, we consider its prejudicial nature and cumulative effect. *State v. Boehning*, 127 Wn. App. 511, 518, 111 P.3d 899 (2005). We review a prosecutor's remarks during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

A.    Improper Burden Shifting

Fairman first argues that the prosecutor's remark that it did not "have to prove much of anything" improperly shifted the burden on Fairman to disprove the elements of her charged offenses. RP at 229. We disagree.

Although it is improper to for a prosecutor to argue that the burden of proof rests with the defendant, a prosecutor has wide latitude to argue reasonable inferences from the evidence. *State v. Thorgerson*, 172 Wn.2d 438, 453, 258 P.3d 43 (2011). A prosecutor may commit misconduct at closing by arguing that the defense failed to present witnesses or by stating that the jury should find the defendant guilty based simply on the defendant's failure to present evidence to support the defense theory of the case. *State v. Sells*, 166 Wn. App. 918, 930, 271 P.3d 952 (2012) (citing *State v. Jackson*, 150 Wn. App. 877, 885, 209 P.3d 553 (2009)), *review denied*, 176 Wn.2d 1001 (2013). However, "'[t]he mere mention that defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of proof to the defense.' A prosecutor is

7

entitled to point out a lack of evidentiary support for the defendant's theory of the case." *Sells*, 166 Wn. App. at 930 (quoting *Jackson*, 150 Wn. App. at 885-86).

Here, viewed in context, the prosecutor's statement that it did not "have to prove much of anything," referred to the evidence presented at trial and how such evidence was uncontested in relation to several of the elements of the charges against Fairman. RP at 229. The prosecutor immediately followed up on this challenged statement with specific references to the elements of the crimes charged and the uncontested evidence supporting those elements. Because the prosecutor's remark referred to the uncontested evidence at trial and did not suggest to the jury that the defense had a burden to disprove any element of the charged offenses, Fairman fails to demonstrate prosecutorial misconduct on this ground.

B.    Witness Credibility

Next, Fairman argues that the prosecutor's remark, "I'll guarantee you after three months there's certainly a conversation between the two of them that could say, hey, take a look at this evidence," and its reference to Jones as Fairman's "so-called niece," improperly expressed a personal opinion on witness credibility. RP at 231, 233.

A prosecutor's expressions of personal opinion about the defendant's guilt or the witnesses' credibility are improper. *Dhaliwal*, 150 Wn.2d at 577-78. To determine whether the prosecutor has improperly expressed a personal opinion, we view the challenged comments in context. *McKenzie*, 157 Wn.2d at 53.

> "It is not uncommon for statements to be made in final arguments which, standing alone, sound like an expression of personal opinion. However, when judged in the light of the total argument, the issues in the case, the evidence discussed during the argument, and the court's instructions, it is usually apparent that counsel is trying to convince the jury of certain ultimate facts and conclusions to be drawn from the evidence. Prejudicial error does not occur until such time as it

> is *clear and unmistakable that counsel is not arguing an inference from the evidence, but is expressing a personal opinion."*

*McKenzie*, 157 Wn.2d at 53-54 (quoting *State v. Papadopoulos*, 34 Wn. App. 397, 400, 662 P.2d 59 (1983)).

Here, the prosecutor's remark that it would "guarantee" that Fairman and Jones "certainly" had a conversation in which they discussed the State's evidence before trial constituted an improper expression of the prosecutor's personal opinion. Although it was improper for the prosecutor to "guarantee" that Fairman and Jones had discussed this, we cannot say that the improper remark was "so flagrant and ill-intentioned" that it caused an "enduring and resulting prejudice" incurable by a jury instruction. *Stenson*, 132 Wn.2d at 719.

Viewing the prosecutor's statement in context, it appears that the prosecutor was attempting to argue a reasonable inference from the evidence that Jones had tailored her testimony to include details regarding the packaging of methamphetamine that she was unaware of until discussing the case with Fairman. There was evidence presented at trial to support this argument. For example, on cross-examination the State questioned Jones about how her initial statement to police failed to mention certain details of the condition of the drugs and paraphernalia found in Fairman's purse that Jones had testified about during her direct examination. Additionally, Jones admitted on cross-examination that she had an opportunity to discuss the case with Fairman before trial, although she denied having done so. The prosecutor referenced this evidence during its closing argument, when it stated:

> She knew what was in there, yet she couldn't describe it. Two months later she says, well, it was just a black cross.
> Yeah, there was a black cross, and I'll guarantee you after three months there's certainly a conversation between the two of them that could say, hey, take a look at this evidence. The methamphetamine bag said black cross, it looks like

9

a black cross on there. That was it, it's all that she described. And then today she came in here and she said, well, there's number ones on there and there's black crosses.

And this story has just grown.

RP at 233. Accordingly, it was not improper for the prosecutor to argue to the jury that it could reasonably infer Jones had discussed the State's evidence with Fairman before trial and tailored her testimony accordingly. It was, however, improper to "guarantee" such an inference. The trial court, though, could have cured any prejudice flowing from the prosecutor's improper remark by instructing the jury to disregard it had Fairman objected. Accordingly, we hold that Fairman has waived her prosecutorial misconduct claim based on this statement.

Fairman also argues that the prosecutor's reference to Jones as Fairman's "so-called niece" improperly expressed a personal opinion about Jones's credibility. RP at 231. We agree that the prosecutor's reference to Jones as Fairman's "so-called niece" was improper, because there was no evidence presented at trial to contradict Jones's testimony that she was Fairman's niece. Although the prosecutor's statement was improper, Fairman did not object to the statement at trial, and we hold that she cannot demonstrate that the statement was so flagrant or ill intentioned that an instruction could not have cured the prejudice. Here the prosecutor's reference to Jones as Fairman's "so-called niece" was brief and did not refer to any evidence that was relevant to an element of the charged crimes. Moreover, the trial court's jury instructions informed the jury that "the lawyer's statements are not evidence" and to "disregard any remark, statement or argument . . . not supported by the evidence." CP at 71. In light of the brevity of the prosecutor's remark, the remark's irrelevance to any fact of consequence in the case, Fairman's failure to object, and the trial court's instructions to disregard any of the prosecutor's remarks that were unsupported by the evidence, we hold that Fairman cannot demonstrate the

requisite prejudice and has waived any error regarding the improper statement. Thus, she fails to demonstrate prosecutorial misconduct on this ground.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Fairman contends that her defense counsel was ineffective for failing to object to the trial court's unwitting possession jury instruction and to the prosecutor's improper closing argument. We disagree.

We review ineffective assistance of counsel claims de novo. *State v. Binh Thach*, 126 Wn. App. 297, 319, 106 P.3d 782 (2005). To prevail on an ineffective assistance of counsel claim, Fairman must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced her. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Brockob*, 159 Wn.2d 311, 344-45, 150 P.3d 59 (2006). Performance is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice results if the outcome of the trial would have been different had defense counsel not rendered deficient performance. *McFarland*, 127 Wn.2d at 337. If Fairman fails to establish either prong of this test, our inquiry ends and we need not consider the other prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). We strongly presume that counsel is effective and the defendant must show the absence of any legitimate strategic or tactical reason supporting defense counsel's actions. *McFarland*, 127 Wn.2d at 337.

Fairman cannot demonstrate that her defense counsel was ineffective for failing to object to the trial court's unwitting possession jury instruction as we have held that the instruction to be proper. Fairman similarly fails to demonstrate ineffective assistance for her counsel's failure to

11

object to the first challenged statement of the prosecutor, since we have held that this statement argued a proper inference from the evidence and did not improperly shift the State's burden of proof.

Fairman also cannot demonstrate ineffective assistance based on defense counsel's failure to object to the prosecutor's "guarantee" remark. Although the remark was improper and an objection could have resulted in the giving of a curative instruction, we cannot say that the outcome of Fairman's trial would have probably differed had defense counsel lodged an objection. As we held above, the prosecutor's statement was improper only insofar as it "guarantee[d]" the fact that Fairman and Jones had discussed the State's evidence before trial. Accordingly, Fairman cannot show the requisite prejudice to establish ineffective assistance of counsel on this ground.

Finally, Fairman cannot demonstrate that her defense counsel was ineffective for failing to object to the prosecutor's reference to Jones as Fairman's "so-called niece," because a legitimate tactical reason supported defense counsel's decision not to object to this remark. Here, defense counsel used the prosecutor's remark during its closing argument to undercut the State's assertions about Jones fabricating her testimony, stating:

> All we could do is ask these people questions. You know, did anybody force you, anybody pressure you, anybody pay you, anybody ask you? We get these statements like her friend, her so-called niece, who testified that that was her aunt sitting over there. Her so-called niece. Is she lying about that, too? And why in the world does she do that?
>
> She gives a statement to the pol— she gives a statement June 11th, talks to the police about a month and a half later, end of July. So the prosecutor makes pains to point out inconsistencies. Well, you know, I'd submit to you that if these two were in cahoots and they were going to sit down and say, okay, here's the deal, you take the fall for me. Okay, sure. You catch the felony. Okay, sure.

12

No. 44117-9-II

RP at 245-46. Because a legitimate tactical reason supported defense counsel's decision not to object to the prosecutor's challenged remark, Fairman's ineffective assistance of counsel claim fails on this ground.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, A.C.J.
_____
BJORGEN, A.C.J.

We concur:

Maxa, J.
_____
MAXA, J.

Lee, J.
_____
LEE, J.

13