155 P.3d 1002 (2007)
STATE of Washington, Respondent,
v.
Gregaline TYLER, Appellant.
No. 24526-8-III.
Court of Appeals of Washington, Division 3.
April 19, 2007.
*1004 David L. Donnan, Gregory Charles Link, Oliver Ross Davis, Washington Appellate Project, Seattle, WA, for Appellant.
Kevin Michael Korsmo, Attorney at Law, Andrew J. Metts III, Spokane County Pros Offc, Spokane, WA, for Respondent.
KULIK, J.
¶ 1 Gregaline Tyler was convicted for the crimes of intimidating a witness and fourth degree assault. On appeal, he claims that alleged statements made by the victim to law enforcement officers were testimonial and should not have been admitted under Crawford v. Washington.[1] Statements taken by law enforcement are almost always testimonial. Here, an officer initiated contact with the victim when it appeared Mr. Tyler was assaulting her. Police then questioned her about Mr. Tyler's actions. We conclude that the trial court erred in finding the victim's statements nontestimonial. And we conclude that the doctrine of forfeiture does not apply because this issue was not raised at trial. We affirm the conviction for fourth degree assault and reverse the conviction for intimidating a witness.

FACTS
¶ 2 On May 8, 2005, Officer Derek Bishop saw a man and woman who appeared to be fighting. The woman, identified as Linda Greer, was crying and visibly upset. She was being followed by Gregaline Tyler, who looked as if he was trying to get Ms. Greer's attention by grabbing her back. Ms. Greer appeared to resist and later told police that it was unwanted contact. Officer Bishop slowly followed the couple in his vehicle and eventually stopped to talk to them.
¶ 3 Officer Bishop asked Mr. Tyler to sit down on the steps of a nearby house while the officer spoke to Ms. Greer, who was crying and hyperventilating. She responded in a whisper to the officer's questions and kept her back to Mr. Tyler. Officer Bishop believed that she was doing this to prevent Mr. Tyler from overhearing the conversation.
¶ 4 Ms. Greer repeatedly requested help from the officer during his questioning. She also stated that Mr. Tyler would kill her if she told police about what was going on. Ms. Greer eventually revealed that she and Mr. Tyler were in a domestic relationship and that Mr. Tyler had been violent with her on more than one occasion. At one point during the questioning, Mr. Tyler shouted something at Officer Bishop and Ms. Greer.
¶ 5 Ms. Greer told Officer Bishop that she was attempting to end her relationship with Mr. Tyler. She also told the officer that, while the two were arguing on the street, Mr. Tyler had slapped her twice and hit her on the knee with a flashlight. Later, Officer Bishop testified that Ms. Greer appeared to believe that Mr. Tyler would kill her if she testified against him at trial.
¶ 6 Officer Bishop called in another officer as backup. He told the other officer that he needed backup because he was investigating a potential domestic violence situation. The officer described Officer Bishop's actions with Mr. Tyler as an attempt to "investigate *1005 [what was] going on." Report of Proceedings (RP) (Aug. 16-18, 2005) at 99.
¶ 7 Mr. Tyler was arrested based on Ms. Greer's statements. Mr. Tyler continued to shout at Ms. Greer while he was being placed in the patrol car. In particular, he yelled that Ms. Greer would have to show up in court for them to charge Mr. Tyler with assault. Police found a flashlight on Mr. Tyler that matched the one described by Ms. Greer. But no marks were found on Ms. Greer's body. The State characterized Ms. Greer as a "prospective witness" at the time Mr. Tyler allegedly made threats against her. RP (Aug. 16-18, 2005) at 120.
¶ 8 Mr. Tyler was charged with intimidating a witness and fourth degree assault. Mr. Tyler sought to suppress Ms. Greer's statements to police officers based on her absence at trial. He argued that Ms. Greer's statements were testimonial and should be excluded under Crawford if Ms. Greer did not testify at trial. Mr. Tyler also requested that he be allowed to present evidence that Ms. Greer had an arrest warrant and that this was the actual reason for her absence from trial. This evidence was intended to rebut the inference that her absence was caused by any threats from Mr. Tyler.
¶ 9 The trial court found that Ms. Greer's statements to police were excited utterances and, therefore, were exceptions to the prohibition against hearsay. The court further concluded that the court in Crawford limited testimonial evidence to situations of police interrogation, and that "preliminary investigative questions at the scene of a crime shortly after it has occurred" are not testimonial.[2] RP (Aug. 17, 2005) at 1020-21. The court deemed Ms. Greer's statements to police to be admissible. The court also ruled that it was barring both Mr. Tyler and the State from speculating on the reasons for Ms. Greer's absence.
¶ 10 Mr. Tyler testified at trial. He denied threatening Ms. Greer. He also asserted that Ms. Greer fell down while the two were walking down the road. Ms. Greer did not testify at trial. But there was testimony from police about the statements she made to the officers.
¶ 11 During closing arguments, Mr. Tyler brought up Ms. Greer's absence from court several times. He limited his statements to the context of the inability of the jury to weigh Ms. Greer's credibility due to her absence. The State responded by asserting that Ms. Greer was not in court because she was intimidated by Mr. Tyler. Mr. Tyler objected to these statements, but was overruled by the trial court.
¶ 12 Mr. Tyler was convicted of intimidating a witness and was sentenced to 36 months' confinement. He was also convicted of fourth degree assault and was sentenced to 365 days, to be served concurrently with his other conviction. This appeal followed.

ANALYSIS
1. Did the admission of Ms. Greer's statements violate Mr. Tyler's Sixth Amendment right to confront adverse witnesses?
¶ 13 This court reviews alleged violations of the confrontation clause de novo. State v. Larry, 108 Wash.App. 894, 901, 34 P.3d 241 (2001). Whether to adopt the doctrine of forfeiture by wrongdoing is a question of law that this court also reviews de novo. See Massachusetts v. Edwards, 444 Mass. 526, 532, 830 N.E.2d 158 (2005).
Confrontation Clause and Testimonial Statements.
¶ 14 The sixth amendment of the United States Constitution guarantees a criminal defendant the right to confront adverse witnesses at trial. Based on this constitutional guarantee, any statement that is testimonial in nature is inadmissible in court unless the maker is available for cross-examination at trial. Crawford, 541 U.S. at 68, 124 S.Ct. 1354. This court must determine whether the statements are testimonial when taken from an alleged assault victim during a *1006 police-initiated contact moments after the alleged assault.
¶ 15 There is no comprehensive definition of a testimonial statement. State v. Shafer, 156 Wash.2d 381, 388, 128 P.3d 87, cert. denied, 127 S.Ct. 553, 166 L.Ed.2d 409 (2006). Statements taken by officers in the course of interrogations are almost always testimonial. Davis, 126 S.Ct. at 2273. So are statements that are the product of police-initiated contact. State v. Mason, 127 Wash.App. 554, 562-63, 126 P.3d 34 (2005). Other types of statements generally require a case-by-case analysis. Id.
¶ 16 If statements are taken when there is no ongoing emergency, and the statements are for the primary purpose of establishing past events that are potentially relevant to a future prosecution, the statements are testimonial. Davis, 126 S.Ct. at 2273-74. If the statements are taken during the course of an ongoing emergency, such as statements made during a 911 call, the statements are nontestimonial. Id. at 2273, 2276-77.
¶ 17 The key difference, according to the court in Davis, is whether the statements are taken to establish a past fact or whether they describe current circumstances requiring police assistance. Id. at 2276. Moreover, statements that begin as nontestimonial statements in response to a current emergency may evolve into testimonial statements if the interrogation continues when the "exigency of the moment" has passed. Id. at 2277.
¶ 18 Initially, Ms. Greer appears to have been hesitant to speak with police. It is uncontested that Ms. Greer and Mr. Tyler were stopped so that police could investigate the interaction between them, given the fight observed by the officers. The officers may have thought there was some initial exigency, but that exigency was terminated as soon as law enforcement separated Ms. Greer and Mr. Tyler.
¶ 19 The officers asked Ms. Greer questions about what had previously transpired. Police described this encounter as an investigation, and the State characterized Ms. Greer as a "prospective witness." RP (Aug. 16-18, 2005) at 120. Taken as a whole, the evidence in this case indicates that Ms. Greer's statements were testimonial. The trial court erred in admitting these statements.
Doctrine of Forfeiture.
¶ 20 The State urges that, even if Ms. Greer's statements were testimonial, the common law doctrine of forfeiture applies and the statements were admissible at trial.
¶ 21 The doctrine of forfeiture by wrongdoing extinguishes a defendant's confrontation rights based on equitable grounds. Crawford, 541 U.S. at 62, 124 S.Ct. 1354; Davis, 126 S.Ct. at 2280. The rule basically requires that "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." Davis, 126 S.Ct. at 2280.
¶ 22 The application of the forfeiture doctrine requires a finding that (1) the defendant engaged in wrongdoing; (2) the wrongdoing was intended to render the absent witness unavailable at trial, and (3) the wrongdoing did, in fact, render the witness unavailable at trial. United States v. Gray, 405 F.3d 227, 241 (4th Cir.2005).
¶ 23 The doctrine of forfeiture has been accepted by the Supreme Court and was codified in Federal Rule of Evidence 804(b)(6). This doctrine has also been adopted by numerous state courts.[3] But the *1007 doctrine of forfeiture has not yet been adopted in Washington. See Mason, 127 Wash.App. at 570, 126 P.3d 34.
¶ 24 Many jurisdictions that have considered the issue have adopted the doctrine of forfeiture by wrongdoing. And there are sound policy reasons to do so. Basic principles of equity require that a person should not be allowed to profit from his or her own wrongdoing. Gray, 405 F.3d at 242. Also, the rule protects the overall integrity of the criminal justice system by deterring litigants from wrongfully preventing the testimony of adverse witnesses. See Geraci, 85 N.Y.2d at 366, 625 N.Y.S.2d 469, 649 N.E.2d 817.
¶ 25 But an issue may not be raised for the first time on appeal unless it is a manifest error affecting a constitutional right. State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995). The doctrine of forfeiture has its roots in principles of equity, not the constitution. Crawford, 541 U.S. at 62, 124 S.Ct. 1354; Davis, 126 S.Ct. at 2280. The State was required to invoke this doctrine at trial to have preserved this issue for review on appeal. There is an insufficient record for this court to review whether this doctrine should be applied in Mr. Tyler's case, and the issue has not been preserved for appeal. On this basis, we decline to apply the doctrine of forfeiture to the facts of this case.
Harmless Error Analysis.
¶ 26 A violation of the confrontation clause is subject to a constitutional harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Under this rule, Mr. Tyler's convictions can be upheld only if this court finds beyond a reasonable doubt that any reasonable jury would have reached the same result without having heard Ms. Greer's alleged statements to the police. See State v. Smith, 148 Wash.2d 122, 139, 59 P.3d 74 (2002). This court applies the overwhelming untainted evidence test to determine whether the admission of the statements was harmless. Id. Under this test, this court must determine whether the remaining untainted evidence admitted at trial was so overwhelming that it would necessarily lead to a finding of guilt. Id.
¶ 27 Here, Mr. Tyler was charged with fourth degree assault. Assault is an intentional touching or striking of another person that is harmful or offensive, regardless of whether it results in physical injury. See State v. Shelley, 85 Wash.App. 24, 28-29, 929 P.2d 489 (1997). Officer Bishop observed Mr. Tyler repeatedly grab at Ms. Greer's back. Ms. Greer resisted Mr. Tyler's contact and appeared to be visibly upset. Based on this evidence, we conclude beyond a reasonable doubt that any reasonable jury would have found Mr. Tyler guilty of fourth degree assault.
¶ 28 But the same cannot be said for Mr. Tyler's conviction for intimidating a witness. A person is guilty of intimidating a witness if that individual, by use of a threat against a current or prospective witness, attempts to influence the testimony of another, induce the other person to elude legal process or otherwise absent himself or herself from the proceedings, or induce the other person not to report information relevant to a criminal investigation. RCW 9A.72.110.
¶ 29 Here, there was one statement made by Mr. Tyler that could support a finding that Mr. Tyler was guilty of intimidating a witness. Mr. Tyler stated that Ms. Greer would have to "show up in court" for them to charge Mr. Tyler. RP (Aug. 16-18, 2005) at 40. Mr. Tyler also stated that he would "tell everyone what [Ms. Greer] did." RP (Aug. 16-18, 2005) at 40.
¶ 30 This was not, however, the remark relied upon by the State to establish that Mr. Tyler had intimidated a witness. Instead, the focus of the evidence was on the alleged threat that Mr. Tyler made against Ms. *1008 Greer that he would kill her if she testified. And this remark was part of the testimonial evidence improperly admitted against Mr. Tyler. Based on these facts, it cannot be established beyond a reasonable doubt that the jury would have found Mr. Tyler guilty of intimidating a witness based solely on the untainted evidence presented at trial.
¶ 31 There is insufficient untainted evidence to conclude that a reasonable jury would have found Mr. Tyler guilty of intimidating a witness. Mr. Tyler's conviction for intimidating a witness is reversed.
¶ 32 Given our reversal of Mr. Tyler's conviction, we need not reach the issue of prosecutorial misconduct. See, e.g., State v. Eckblad, 152 Wash.2d 515, 522, 98 P.3d 1184 (2004).
¶ 33 We affirm Mr. Tyler's conviction of fourth degree assault and reverse his conviction for intimidating a witness.
WE CONCUR: SCHULTHEIS, A.C.J., and KATO, J. Pro Tem.
NOTES
[1] Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
[2] We note that the trial court did not have the benefit of the recent decision in Davis v. Washington, ___ U.S. ___, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), at the time the court found that Ms. Greer's statements were nontestimonial.
[3] Almost 20 states have adopted the doctrine of forfeiture by wrongdoing. See, e.g., Arizona v. Valencia, 186 Ariz. 493, 498, 924 P.2d 497 (1996); Colorado v. Moore, 117 P.3d 1, 5 (Colo. Ct.App.2004); Connecticut v. Henry, 76 Conn. App. 515, 525-26, 820 A.2d 1076 (2003); Illinois v. Hampton, 363 Ill.App.3d 293, 300-01, 299 Ill.Dec. 772, 842 N.E.2d 1124 (2006); Iowa v. Hallum, 606 N.W.2d 351, 354-55 (Iowa 2000); Kansas v. Meeks, 277 Kan. 609, 613-14, 88 P.3d 789 (2004); Edwards, 444 Mass. at 532-33, 830 N.E.2d 158; Michigan v. Harrington, 472 Mich. 854, 855-56, 691 N.W.2d 436 (2005); Minnesota v. Black, 291 N.W.2d 208, 213-14 (Minn.1980); New Jersey v. Sheppard, 197 N.J.Super. 411, 436, 484 A.2d 1330 (1984); New Mexico v. Alvarez-Lopez, 2004-NMSC-030, 136 N.M. 309, 313-14, 98 P.3d 699; New York v. Geraci, 85 N.Y.2d 359, 366, 625 N.Y.S.2d 469, 649 N.E.2d 817 (1995); Ohio v. Hand, 107 Ohio St.3d 378, 391-92, 840 N.E.2d 151 (2006); Pennsylvania v. Paddy, 569 Pa. 47, 73 n. 10, 800 A.2d 294 (2002); Tennessee v. Ivy, 188 S.W.3d 132, cert. denied, U.S. ___, 127 S.Ct. 258, 166 L.Ed.2d 200 (Tenn.2006); Gonzalez v. Texas, 195 S.W.3d 114, 117, cert. denied, ___ U.S. ___, 127 S.Ct. 564, 166 L.Ed.2d 418 (Tex.Crim.App.2006); Virginia v. Morgan, 69 Va. Cir. 228, 231 (2005); West Virginia v. Mechling, 219 W.Va. 366, 633 S.E.2d 311, 325-26 (2006).