FILED
COURT OF APPEALS
DIVISION II

2015 JUN 30 AM 8: 31

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45826-8-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| AYALNEH M. ANEBO, | |
| Appellant. | |

BJORGEN, A.C.J. — A jury returned verdicts finding Ayalneh Marcus Anebo guilty of

unlawful delivery of a controlled substance (Oxycodone) and unlawful possession of a controlled

substance (Oxycodone) with intent to deliver. The jury also returned special verdicts finding that

Anebo committed both offenses within 1,000 feet of the perimeter of a school ground. Anebo

appeals his sentencing enhancements, asserting that (1) the trial court erred by admitting as

evidence a map containing inadmissible hearsay, (2) the admission of the map violated his

constitutional right of confrontation, and (3) his counsel was ineffective for failing to make a

proper objection to the admission of the map. Anebo contends that absent admission of the map at issue, the State failed to present sufficient evidence in support of his school zone sentencing enhancements. In his statement of additional grounds for review (SAG), Anebo appeals his convictions, asserting that (1) the trial court erred by seating a juror who had prior knowledge of the case and (2) his counsel was ineffective for failing to object to the juror being seated on the jury.[1] We affirm.

## FACTS

On March 20, 2013, a confidential informant working with Centralia Police Officer Adam Haggerty performed a "controlled buy" of 100 Oxycodone pills.[2] Report of Proceedings (RP) at 89. The informant arranged to purchase the 100 pills from Veasna Uon for $3,000 and met Uon at Uon's home in Olympia, Washington for the transaction. Approximately 30 minutes later, Anebo arrived in a silver Volvo and parked in Uon's driveway. The informant handed $3,000 in prerecorded buy money to Uon and waited with Haggerty in Haggerty's vehicle. Uon then handed the cash to Anebo, who counted the money and then retrieved a bag of pills from the

---

[1] In his SAG, Anebo also appears to reference *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), but he does not explain the nature or occurrence of any claimed errors under *Brady*, contrary to the requirements of RAP 10.10(c). Instead, Anebo's SAG merely states:

> The *Brady* obligations apply to a prosecutor[']s conduct even when the defense has not requested the discovery of exculpatory evidence. A prosecutor[']s duty to disclose exculpatory evidence under *Brady* extends his or her personal knowledge of such evidence.

SAG at 2. Because Anebo does not allege that the State withheld any evidence in violation of *Brady*, we do not further address the issue.

[2] Haggerty described a "controlled buy" as:

> [A] purchase of narcotics or contraband from a suspect, known or unknown, and it is directed by law enforcement entirely from the word go. And the informant is sterilized, so I can testify on the stand that they did not have any narcotics on them prior to going into the vehicle, and they park near the house to buy narcotics.

RP at 89.

trunk of his Volvo. After Uon gave the bag of pills to the informant, law enforcement officers moved in to arrest the suspects. Anebo fled in his Volvo and crashed into an undercover police vehicle that was blocking his escape.

Based on this incident, the State charged Anebo by second amended information with unlawful delivery of a controlled substance, unlawful possession of a controlled substance with intent to deliver, and second degree assault.[3] The State also alleged that Anebo committed the offenses of unlawful delivery of a controlled substance and unlawful possession of a controlled substance with intent to deliver within 1,000 feet of the perimeter of school grounds.

Before trial, there was a brief sidebar discussion between counsel and the trial court regarding a potential juror who had thought he read about Anebo's case in the newspaper. The trial court later created a record of the sidebar discussion, stating:

> [Trial Court]: Juror Number 29 . . . had indicated that he thought he had read about this case recently in the newspaper. The lawyers and I both indicated that we did not believe that this case had been in the newspaper recently, and also, there was not a basis [to dismiss the juror for cause], because the juror ultimately said that that would not affect his consideration in this case.
> Is there anything you would like to add to that side bar, [State]?
> [State]: No, Your Honor.
> [Trial Court]: [Defense counsel]?
> [Defense counsel]: I have nothing.

RP at 33-34.

At trial, Officer Haggerty testified consistently with the facts as stated above. Additionally, Haggerty testified that on the day of the incident he saw children playing on the other side of a chain link fence that separated Uon's residence from the neighboring property.

---

[3] The trial court declared a mistrial with respect to the second degree assault charge after the jury indicated that it could not reach a verdict on that charge.

He further testified that the building on the neighboring property was the Olympic View Elementary School.

Kelly Alfaro-Haugen testified that she works as a geographic information systems analyst for the Thurston County GeoData Center. Alfaro-Haugen stated that the Thurston County GeoData Center provides mapping and data services for Thurston County, using mapping software to create maps that depict locations within the county. With respect to this case, Alfaro-Haugen testified that she created two maps depicting a 1,000-foot radius around the center point of Uon's residence, the location of Anebo's alleged crimes. Alfaro-Haugen stated that she identifies the location of all Thurston County public schools by using data from the Thurston County 911 office, and that she verifies this information with parcel data from the county assessor's office. Alfaro-Haugen said that she was able to locate the Olympic View Elementary School using this process, and that she had identified its location on one of the maps, Exhibit 16, by labeling the building with the name of the school.

Anebo objected to the admission Exhibit 16, arguing that the text, "Olympic View Elementary School," printed over the building behind Uon's residence, was based on inadmissible hearsay. RP at 228; Ex. 16. The trial court overruled the objection under the business record exception to the hearsay rule, stating:

> I find that Exhibit 16 was prepared in the witness'[s] regular course of business. I further find, as it relates to business records, that the underlying information used to create that exhibit is reliable information. The witness testified that that information came from the Assessor's Office of Thurston County and from the Thurston County 911 Center. And I find that that information is reliable information. It is information that this witness has testified to that she relies upon, basically, on a daily basis, in the preparation of maps that she does on a daily basis. And therefore, it does fit within the business records exception because of the reliability of the underlying information. And I am going to overrule the objection and admit the exhibit.

4

RP at 234. The jury returned verdicts finding Anebo guilty of unlawful delivery of a controlled substance and unlawful possession of a controlled substance with intent to deliver. The jury also returned special verdicts finding that Anebo committed his crimes within 1,000 feet of the perimeter of school grounds. Anebo appeals.

## ANALYSIS

### I. ADMISSION OF EXHIBIT 16

Anebo first contends that the trial court erred by admitting a map containing inadmissible hearsay in the form of text superimposed over a building on the map stating, "Olympic View Elementary School." Anebo further contends that the admission of the map violated his right to confront adverse witnesses, because he could not cross-examine the person who generated the data Alfaro-Haugen used to determine the location of the Olympic View Elementary School. We need not decide whether the trial court erred by admitting the map at issue or whether such error violated Anebo's confrontation right because, even assuming that the text "Olympic View Elementary School" constituted inadmissible hearsay, any error in admitting the map was harmless beyond a reasonable doubt in light of Haggarty's testimony regarding the location of the school.

Under ER 802, hearsay evidence is inadmissible unless an exception applies. A nonconstitutional error in admitting hearsay evidence is harmless, unless there was a reasonable probability that the error materially affected the outcome of the trial. *State v. Alvarez-Abrego*, 154 Wn. App. 351, 369, 225 P.3d 396 (2010). The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution provide an accused

person with the right to confront the witnesses against him or her.[4] Therefore, in general a witness may not testify against a defendant unless that witness appears at trial or the defendant had a prior opportunity to cross-examine the witness. *State v. Jasper*, 174 Wn.2d 96, 109, 271 P.3d 876 (2012).

Admission of hearsay evidence in violation of a defendant's right to confront adverse witnesses is subject to the constitutional harmless error test. *State v. Watt*, 160 Wn.2d 626, 633, 160 P.3d 640 (2007). Under this test, we may affirm Anebo's sentencing enhancements only if we are convinced beyond a reasonable doubt that the jury would have found that Anebo committed his crimes within 1,000 feet of the perimeter of a school absent admission of the map at issue. *State v. Tyler*, 138 Wn. App. 120, 129, 155 P.3d 1002 (2007). To determine if the jury would have reached the same special verdict finding, we look to whether the untainted evidence regarding the school's location was so overwhelming that it would have necessarily led to the jury's finding that Anebo committed his offenses within 1,000 feet of the school. *Tyler*, 138 Wn. App. at 129-30.

Here, the trial court admitted two maps, both of which depict a 1,000 foot perimeter surrounding Uon's residence, the location where Anebo committed his crimes. Anebo did not challenge at trial or on appeal the admission of Exhibit 15, the map that did not label the location of the Olympic View Elementary School. On that map, it is clear that only one nonresidential building abuts Uon's residence, and that the nonresidential building is completely located within the 1,000 foot perimeter surrounding Uon's residence. Haggerty's untainted testimony that the building abutting Uon's residence was the Olympic View Elementary School established that

---

[4] The federal and state constitutions provide the same protections with respect to a defendant's right to confront witnesses against him or her. *State v. Lui*, 179 Wn.2d 457, 468, 315 P.3d 493, *cert. denied*, 134 S. Ct. 2842 (2014).

this nonresidential building was the Olympic View Elementary School. Therefore, we are convinced beyond a reasonable doubt that the jury would have reached the same special verdict finding Anebo committed his crimes within 1,000 feet of the perimeter of a school even absent admission of Exhibit 16, the map at issue. Because we are convinced beyond a reasonable doubt that Haggerty's untainted testimony rendered any constitutional error in admitting the map harmless, we hold that any nonconstitutional error in admitting the map was unlikely to have materially affected the outcome of Anebo's trial and was, thus, harmless. Accordingly, we hold that any error in admitting Exhibit 16 was harmless.

## II. SUFFICIENCY OF THE EVIDENCE

Next, Anebo contends that absent admission of Exhibit 16, the State failed to present sufficient evidence in support of the jury's special verdict finding that he committed his crimes within 1,000 feet of a school. However, we have already determined in our harmless error analysis above that Exhibit 15 together with Haggarty's testimony clearly established the location of Anebo's crimes in relation to a school zone. Accordingly, sufficient evidence supports the jury's special verdict.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Anebo asserts that his trial counsel provided ineffective assistance by failing to properly object to the admission of Exhibit 16. We disagree.

We review ineffective assistance of counsel claims de novo. *State v. Binh Thach*, 126 Wn. App. 297, 319, 106 P.3d 782 (2005). To prevail on an ineffective assistance of counsel claim, Anebo must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Brockob*, 159 Wn.2d 311, 344-45, 150 P.3d 59 (2006).

Here, defense counsel objected several times to the admission of Exhibit 16 and preserved Anebo's contentions with the admission of the exhibit for appeal. Accordingly, Anebo fails to demonstrate that his counsel performed deficiently. Additionally, even if Anebo could demonstrate deficient performance, he cannot show any resulting prejudice because, as discussed above, we are convinced beyond a reasonable doubt that the jury would have reached the same special verdict absent admission of Exhibit 16. We thus affirm Anebo's sentencing enhancements.

## IV. SAG

In his SAG, Anebo appeals his convictions, asserting that (1) the trial court erred by seating a juror who had prior knowledge of the case and (2) his counsel was ineffective for failing to object to the juror being seated on the jury. Because there is no evidence in the record that a sitting juror had actual knowledge of Anebo's case prior to trial, we disagree on both points.

Although the record indicates that a potential juror told the trial court that he thought he had read about the case in a newspaper article, the trial court concluded, and counsel agreed, that there was no newspaper article regarding Anebo's case, stating:

> Juror Number 29 . . . had indicated that he thought he had read about this case recently in the newspaper. The lawyers and I both indicated that we did not believe that this case had been in the newspaper recently, and also, there was not a basis [to dismiss the juror for cause], because the juror ultimately said that that would not affect his consideration in this case.

RP at 33-34. On this record, Anebo cannot demonstrate that the trial court erred by seating a juror with prior knowledge of his case or that his defense counsel was ineffective for failing to

move for the juror's dismissal for cause. We thus affirm Anebo's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJØRGEN, A.C.J.

We concur:

LEE, J.

SUTTON, J.