IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32862-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| CYNTHIA LOU MICHEL, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Cynthia Michel appeals her convictions for fourth degree assault and aggravated first degree child molestation. She contends insufficient evidence supports these convictions. We affirm.

FACTS

Ms. Michel is the paternal grandmother of D.M., born December 17, 2000, and H.M., born May 16, 2002. Because D.M. and H.M.'s mother trusted Ms. Michel, the sisters have regularly and frequently visited Ms. Michel throughout their lives. However, the girls' maternal grandmother, Laurie Reese, did not trust Ms. Michel. In the past, Ms. Reese and Ms. Michel engaged in heated discussions over the ways in which Ms. Michel touched the girls. Specifically, Ms. Reese observed Ms. Michel inappropriately rubbing

the girls' bottoms, kissing them on the lips, and making the girls kiss her. Ms. Reese told Ms. Michel "a grandmother is not supposed to kiss their grandchildren like that." Report of Proceedings (RP) at 70. D.M. and H.M. first disclosed Ms. Michel's unwanted behavior to Ms. Reese.

According to D.M., Ms. Michel touched her bare breast and nipple while they were in Ms. Michel's bedroom. Despite the fact that the then 11-year-old D.M. did not ask Ms. Michel to touch her or for help, Ms. Michel told D.M. to lift her top, come over, and let her feel. D.M. stated Ms. Michel "kind of like felt around and she said that I was growing breasts. And it wasn't hard, it was kind of softly. But it was uncomfortable." RP at 135. D.M. contrasted how she felt during this incident to others before where she asked for Ms. Michel to help her with her bra, stating she was not uncomfortable previously because she had asked for help. H.M., around 10 years old at the time, witnessed Ms. Michel's actions. She said when D.M. asked Ms. Michel to stop, she stopped.

H.M. also experienced unwanted touching. According to her, Ms. Michel used her hand to rub the outside of H.M.'s vagina, both on top of H.M.'s clothing and underneath her underwear. This happened in the living room and Ms. Michel's bedroom; H.M. said she was sitting on Ms. Michel's lap when the touching occurred. When H.M. told Ms.

Michel to stop, Ms. Michel "would guilt trip [H.M.] and say, what, you don't love me?" RP at 96. H.M. responded, "Yes, grandma, I love you, I just don't like that." *Id.*

Both D.M. and H.M. also related incidents of unwanted kissing where Ms. Michel would stick her tongue in their mouths. Each time it happened, D.M. pulled back and said "ew." RP at 136. When D.M. asked her to stop, Ms. Michel asked "what, you don't love me?"; D.M. replied "yes, grandma, I love you, but I mean I don't want to do this thing with you, it's gross." RP at 137. H.M. echoed D.M.'s complaints. Each of the three times it happened, H.M. told Ms. Michel to stop as the kissing made her feel uncomfortable. Ms. Michel also asked H.M. whether H.M. loved her anymore.

The State charged Ms. Michel with two counts of first degree child molestation but at the close of its case in chief amended the information to one count of fourth degree assault against D.M. and one count of first degree child molestation against H.M. with an aggravator of abuse of a position of trust. At trial, Ms. Michel denied sexually touching either D.M. or H.M. Ms. Michel's expert, Dr. Phillip Esplin, a psychologist, testified the girls' father had told H.M. Ms. Michel abused him; according to Dr. Esplin, this could lead to negative stereotyping of the accused, which could in turn adversely affect the child's motivation to make the statements and the reliability of the statements. The jury found Ms. Michel guilty as charged. Ms. Michel appealed.

3

ANALYSIS

Ms. Michel contends her convictions must be reversed because there was insufficient evidence of any actual touching of D.M.'s breast or H.M.'s vagina. Evidence is sufficient to support a guilty finding if "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). An evidence sufficiency challenge "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the jury's assessment of conflicting testimony, witness credibility, and evidence weight. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308 (1989).

## A. FOURTH DEGREE ASSAULT

"Assault is an intentional touching or striking of another person that is harmful or offensive, regardless of whether it results in physical injury." *State v. Tyler*, 138 Wn. App. 120, 130, 155 P.3d 1002 (2007). Ms. Michel argues the jury impermissibly based the existence of facts, namely that she touched the girls inappropriately, on guess, speculation, or conjecture. *See State v. Hutton*, 7 Wn. App. 726, 728, 502 P.2d 1037 (1972).

4

Ms. Michel ignores the evidence establishing she touched D.M.'s breast and inappropriately kissed D.M. Both D.M. and H.M. testified Ms. Michel touched D.M.'s breast. The fact that Dr. Esplin's testimony provided an explanation as to why the girls were not credible does not negate the girls' testimony. At that point, there were two competing versions of what happened to the girls; the jury obviously believed the testimony of D.M. and H.M. We do not review witness credibility or reassess the weight of evidence. The testimony of D.M. shows two offensive "touchings": the touching of her bare breast/nipple and kissing involving tongue. D.M. found these touches offensive, and an ordinary person not unduly sensitive would too. *See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 35.50 (3d ed.) (2008). The testimony also shows sufficient evidence of intent. Ms. Michel asked D.M. to come to her so she could feel D.M.'s breast; D.M. expressed her discomfort with the kissing and asked D.M. if she loved her when D.M. asked her to stop. It is thus reasonable to infer Ms. Michel intended to make physical contact with D.M. on both occasions. *See State v. Jarvis*, 160 Wn. App. 111, 119, 246 P.3d 1280 (2011) (the intent required for assault is the intent to make physical contact with the victim).

## B. FIRST DEGREE CHILD MOLESTATION

"A person is guilty of child molestation in the first degree when the person has . . . sexual contact with another who is less than twelve years old and not married to the

perpetrator and the perpetrator is at least thirty-six months older than the victim."

RCW 9A.44.083(1). Only the sexual contact element is at issue here as Ms. Michel again

contends the jury impermissibly speculated as to whether she touched H.M.'s vagina.[1]

"Sexual contact" is "any touching of the sexual or other intimate parts of a person

done for the purpose of gratifying sexual desire of either party." RCW 9A.44.010(2).

"Contact is 'intimate' within the meaning of the statute if the conduct is of such a nature

that a person of common intelligence could fairly be expected to know that, under the

circumstances, the parts touched were intimate and therefore the touching was improper."

*State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009) (internal quotation marks

omitted). While proof that an unrelated adult with no caretaking function has touched the

intimate parts of a child supports the inference the touch was for the purpose of sexual

gratification, the fact finder can consider circumstantial evidence surrounding the

touching if the adult has a caretaking function. *State v. Wilson*, 56 Wn. App. 63, 68, 782

P.2d 224 (1989).

Again, the jury believed H.M.'s testimony over that of Ms. Michel and Dr. Esplin.

H.M.'s testimony provides sufficient evidence for Ms. Michel's conviction. H.M.

testified Ms. Michel used her hand to rub H.M.'s vagina both over and underneath her

---

[1] Because Ms. Michel does not argue sufficiency of the evidence for the aggravating circumstance that she abused a position of trust, the State's argument on this point is not addressed.

clothes. This happened in both the living room and Ms. Michel's bedroom. When H.M. asked Ms. Michel to stop, Ms. Michel would ask "what, you don't love me?" RP at 96. A person of common intelligence could fairly be expected to know touching a 10-year-old's vagina was intimate and thus improper. Given the rooms where the touching occurred, how Ms. Michel actually went about touching H.M., and Ms. Michel's response to H.M.'s request to stop the touching, a rational person could infer, beyond a reasonable doubt, the sexual contact was done for the purpose of sexual gratification.

A similar analysis follows for the unwanted kissing. According to H.M., Ms. Michel kissed her using her tongue three times. When H.M. told her to stop because she did not like it, Ms. Michel again responded with "you don't love me anymore?" RP at 104. Given the circumstances—including H.M.'s objection to the kissing, Ms. Michel's response to H.M.'s request she stop kissing her with her tongue, and Ms. Reese's observations and discussions with Ms. Michel about how she kissed the girls—a jury could reasonably infer kissing with tongues constitutes contact with intimate parts for purposes of sexual gratification. *See State v. Allen*, 57 Wn. App. 134, 787 P.2d 566 (1990) (evidence of kissing sufficient to prove sexual contact under indecent liberties statute).

7

No. 32862-7-III
*State v. Michel*

Affirm.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Siddoway, C.J.

Korsmo, J.