## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52207-1-II |
| Respondent, | |
| v. | |
| GREGGORY ALLEN BOUCH, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Greggory Allen Bouch appeals from his bench trial conviction for third degree assault. He argues that the trial court erred in failing to enter an express finding that he acted with intent, an element of the crime. The State concedes that the trial court failed to make a finding on intent, but it argues that because there is sufficient evidence of intent, the error is harmless. We accept the State's concession as to the missing finding and hold that the error was harmless.

Bouch also argues that the criminal filing fee and deoxyribonucleic acid (DNA) collection fee imposed by the trial court should be struck. Again, the State concedes error. We accept the State's concession.

Accordingly, we affirm the conviction but remand the matter to the trial court to strike the criminal filing fee and the DNA collection fee.

FACTS

In the early morning hours of January 6, 2018, Washington State Patrol Trooper Patrick Mariakis arrested Bouch for a suspected no-contact order violation. During a search of Bouch's clothing following his arrest, Mariakis found a baggie containing what appeared to be methamphetamine and placed the baggie on his patrol car. Bouch then lunged away from Mariakis, and Mariakis tackled Bouch and took him to the ground.

Other officers, including Trooper Adam Richardson, arrived three to four minutes later and assisted Mariakis, who was on Bouch's back trying to hold him down. As the officers rolled Bouch to his side to try to stand him up, Bouch looked at Mariakis, yelled, "I should have kicked you in effing head" and kicked Mariakis's leg. Verbatim Report of Proceedings (VRP) at 15. According to Richardson, who was standing nearby and was not involved in restraining Bouch, "it was a very blatant kick" and Bouch was not just "making a rapid kicking motion with [his] leg" or "positioning [his] leg to attempt to stand up." *Id.* at 27. Mariakis was not injured by the kick.

The State charged Bouch with third degree assault under RCW 9A.36.031(1)(g). The State alleged that Bouch had intentionally assaulted Mariakis who was performing his official duties at the time of the assault.

Bouch waived his right to a jury trial. In his opening statement, Bouch argued that he did not "intentionally attempt to kick Trooper Mariakis." VRP at 6.

Mariakis and Richardson testified consistent with the facts above. The trial court also watched Mariakis's dash cam video, which was consistent with the officers' testimonies.

Bouch testified and admitted saying that he should have kicked Mariakis in the head. But he denied kicking Mariakis and asserted that he (Bouch) had only been moving his legs in an attempt to stand up.

In his closing argument, defense counsel argued that the trial court had to find that Bouch "intended to kick" Mariakis and that the evidence did "not show a deliberate effort to kick the officer." *Id.* at 35. In response, the trial court asked defense counsel why Bouch would say, "I should have kicked you in the head" if Bouch had not kicked Mariakis. *Id.*

In its oral ruling, the trial court stated,

> While the video in and of itself isn't extremely clear, in terms of being able to see everything that happened, I find the testimony of Trooper Richardson particularly helpful in this case, because when he arrived and was observing what happened, he wasn't involved in the struggle with Mr. Bouch, and was able to observe, I don't want to use the term more clearly, but he was able to observe what happened without having to contend with defending himself against Mr. Bouch, or otherwise being focused upon getting Mr. Bouch under control. And, Trooper Richardson described what he saw and said that he saw a kick. And Trooper Mariakis was equally clear that Mr. Bouch had kicked him.
>  The definition of assault is very broad, and it doesn't require physical injury. It's any touching that is offensive to the person being touched. And on the case of third degree assault, the person who is the recipient of the unwanted touching has to be a police officer who is in the act of performing his official duties at the time.
>  I think that's what happened here.
>  I don't think it is, I am convinced beyond a reasonable doubt that's what happened here.
>  I find the defendant guilty of third degree assault.

*Id.* at 36-37.

The trial court subsequently entered the following written findings of fact and conclusions of law:

## II. FINDINGS OF FACT

1. The evidence presented in this case consisted of the testimony of Washington State Patrol (WSP) Trooper Patrick Mariakis, WSP Trooper

2.     Adam Richardson, the Defendant, and dash cam video from Trooper Mariakis' patrol vehicle depicting the events.
2.     The dash cam video was not extremely clear in terms of being able to see what happened.
3.     The testimony of Trooper Richardson was particularly helpful in that when he arrived on scene, he was not involved in the struggle with the Defendant and was able to observe the events without also having to contend with getting the Defendant under control.
4.     Trooper Richardson testified that he clearly saw a kick on the part of the Defendant.
5.     Trooper Mariakis was equally clear in his testimony that the Defendant kicked him.

### III. CONCLUSIONS OF LAW

1.     The definition of Assault is very broad, includes offensive touching, and does not require physical injury.
2.     In the case of Assault in the Third Degree, the recipient of the touching must be a law enforcement officer who is in the act of performing his official duties at the time of the assault.
3.     The State has proven beyond a reasonable doubt that the Defendant kicked Trooper Mariakis, a law enforcement officer on duty at the time, on January 6, 2018 in Grays Harbor County.
4.     The Defendant is guilty of Assault in the Third Degree.

Clerk's Papers at 8-9.

At sentencing, the trial court imposed a criminal filing fee and a DNA collection fee. Bouch's judgment and sentence shows that he had at least one prior felony conviction.

Bouch appeals his conviction and the imposition of the criminal filing fee and the DNA collection fee.

## DISCUSSION

### I. INTENT ELEMENT

Bouch first argues that his conviction should be reversed and the charges dismissed because the trial court failed to find that he acted with intent, an element of the crime. The State concedes that the trial court failed to make a finding on the intent element. We agree that the trial court

4

failed to make a specific finding on the intent element, but we hold that this error was harmless and affirm the conviction.

A. LEGAL PRINCIPLES

Following a bench trial, the trial court must enter findings of fact and conclusions of law. CrR 6.1(d); *State v. Banks*, 149 Wn.2d 38, 43, 65 P.3d 1198 (2003). These findings of fact and conclusions of law must address each element of the charged offense, "setting out the factual basis for each conclusion of law." *Id*. "In addition, the findings must specifically state that an element has been met." *Id*.

But the failure to make express findings that an element has been met does not automatically require remand; insufficiency of findings of fact and conclusions of law from a bench trial is subject to a harmless error analysis. *Id*. at 43-44. To address whether the omission in the findings of fact and conclusions of law is harmless, we examine "'whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id*. at 44 (internal quotation marks omitted) (quoting *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002)). We must determine whether "'there is a reasonable probability that the outcome of the trial would have been different had the error not occurred. . . . A reasonable probability exists when confidence in the outcome of the trial is undermined.'" *Id*. (quoting *State v. Powell*, 126 Wn.2d 244, 267, 893 P.2d 615 (1995)).

B. MISSING ELEMENT

RCW 9A.36.031 provides, in part,

(1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:
        . . . .

5

      (g)    Assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault.

Because RCW 9A.36.031 does not define "assault," assault is defined by the following common law definition: "(1) an unlawful touching (actual battery); (2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it (attempted battery); and (3) putting another in apprehension of harm." *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009).

      1.    INTENT ELEMENT FOR ACTUAL BATTERY

As a preliminary matter, we must first clarify the intent element at issue here. Bouch relies on *State v. Byrd*, 125 Wn.2d 707, 887 P.2d 396 (1995), *State v. Williams*, 159 Wn. App. 298, 244 P.3d 1018 (2011), *State v. Tyler*, 138 Wn. App. 120, 130, 155 P.3d 1002 (2007), and *State v. Jarvis*, 160 Wn. App. 111, 118, 246 P.3d 1280 (2011), for the premise that specific intent to cause bodily harm or to create an apprehension of bodily harm is an essential element of third degree assault. Because this case involves an actual battery, this characterization of the intent element is incorrect.

When, as here, the assault is an actual battery, the trial court is not required to find that the defendant acted with specific intent to cause bodily harm or to create an apprehension of bodily harm. "'Unlike the other forms of assault, assault by actual battery (physical contact) does *not* require proof of specific intent to cause apprehension or inflict substantial bodily harm.'" *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017) (emphasis added) (quoting *State v. Stevens*, 158 Wn.2d 304, 314, 143 P.3d 817 (2006) (Madsen, J., dissenting)). Instead, the trial court need find that the defendant only intended "'to do the physical act constituting the assault.'" *Id.* (internal quotation marks omitted) (quoting *Stevens*, 158 Wn.2d at 314 (Madsen, J., dissenting)).

Bouch's reliance on *Byrd* and *Williams* is misplaced. *Byrd* is inapposite because it addresses a third degree assault based on the intent to cause apprehension of bodily harm, not an actual battery. 125 Wn.2d at 712-13. And although *Williams* involved an actual battery, the *Williams* court cites only to *Byrd*, which, as previously noted, does not address the intent requirement for a third degree assault based on an actual battery. *Williams*, 159 Wn. App. at 307-08.

Similarly, Bouch's reliance on *Tyler* and *Jarvis* is not persuasive. The *Tyler* court did not discuss intent. 138 Wn. App. at 130. And the *Jarvis* court expressly rejected the proposition that an assault by battery requires proof that the defendant intended to commit an assault. 160 Wn. App. at 119.

Accordingly, the element at issue here is whether Bouch intended "'to do the physical act constituting the assault,'" not whether Bouch had specific intent to cause bodily harm or to create an apprehension of bodily harm. *Cardenas-Flores*, 189 Wn.2d at 266 (internal quotation marks omitted) (quoting *Stevens*, 158 Wn.2d at 314 (Madsen, J., dissenting)).

2.      HARMLESS ERROR

Here, the assault was by actual battery. Thus, the intent required to prove an assault by battery is the intent "'to do the physical act constituting the assault.'" *Id.* (internal quotation marks omitted) (quoting *Stevens*, 158 Wn.2d at 314 (Madsen, J., dissenting)).

The trial court found that Bouch kicked Officer Mariakis, but it did not make an express finding that Bouch's physical act of kicking was an intentional act. Thus, as the State concedes, the trial court's findings of fact are inadequate. This error is, however, subject to a harmless error analysis. *Banks*, 149 Wn.2d at 43-44.

7

This case is similar to *Banks*. In *Banks*, our Supreme Court affirmed Banks's bench trial conviction for unlawful possession of a firearm even though the trial court did not specifically address the "knowledge" element in its findings and conclusions. *Id.* at 43, 46. The *Banks* court concluded that the trial court's error was harmless beyond a reasonable doubt because Banks contested knowledge and the trial court's findings and conclusions indicated it considered knowledge. *Id.* at 46. Similarly here, Bouch contested the intent element; the trial court discussed this element with defense counsel, distinguishing an intentional kick from unintentional contact while Bouch was trying to stand; and the trial court's finding that Bouch "kicked" Mariakis taken in context with the trial court's discussion demonstrates that the trial court considered the intent element. VRP at 30, 32, 35-36.

Examining the trial court's use of the word "kick" in context, it is clear that the trial court was distinguishing the involuntary act of accidentally coming into contact with Mariakis while attempting to stand from the intentional act of striking out at Mariakis. Because the trial court's finding that Bouch kicked Mariakis implied an intentional act and demonstrated the trial court considered intent, there is no reasonable probability that the outcome of the trial could have differed and the error not occurred. Thus, we conclude that any inadequacy in the trial court's findings were harmless beyond a reasonable doubt.

## II. CRIMINAL FILING FEE AND DNA COLLECTION FEE

Bouch next argues that under recent amendments to the legal financial obligation (LFO) statutes, we must remand this matter to the trial court to strike the criminal filing fee and the DNA collection fee. The State concedes that remand to strike these LFOs is required under *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). We accept the State's concession and remand to

No. 52207-1-II

the trial court to strike the criminal filing fee and the DNA collection fee from the judgment and sentence.

Accordingly, we affirm the conviction but remand the matter to the trial court to strike the criminal filing fee and the DNA collection fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, J.

LEE, A.C.J.

9