IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38899-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| K.D.A.-H.,† | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J.P.T.[1] — K.D.A.-H. appeals an order of adjudication and disposition finding him guilty of a fourth degree assault of his sister. He contends the evidence is insufficient to support the finding of guilt, and makes associated assignments of error to three of the court's conclusions of law. He also contends that remand is required for the court to make findings on whether K.D.A.-H.'s conduct was intentional and offensive.

We reject the challenge to the sufficiency of the evidence but agree that additional findings are required. We remand for that purpose.

---

† Consistent with RAP 3.4 and General Order of Division III, *In Re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), we refer to the appellant and his sister by their initials. Our general order is available at http://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders _orddisp&ordnumber=2012_001&div=III.

[1] Judge Laurel H. Siddoway was a member of the Court of Appeals at the time argument was held on this matter. She is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

No. 38899-9-III
*State v. K.D.A.-H.*

FACTS AND PROCEDURAL BACKGROUND

We rely for the factual background primarily on the juvenile court's findings, which are unchallenged and are therefore verities on appeal. *State v. B.J.S.*, 140 Wn. App. 91, 97, 169 P.3d 34 (2007).

On October 6, 2021, K.D.A.-H. had recently been released from the hospital after surgery. He had lost weight and was weak. He was resting in a bedroom of his mother's home when his sister, K.M.R. came upstairs to the room, looking for the two family dogs. One of K.M.R.'s chores was to let the dogs outside in the morning, before school. K.D.A.-H. was sitting on the edge of the bed with his feet hanging over the edge.

As K.M.R. attempted to retrieve Bosley, K.D.A.-H.'s dog, it nipped at her and she responded by hitting it on the nose. K.D.A.-H. told her not to hit the dog and K.M.R.—who described herself as in a bad mood that morning—responded, "No one is talking to you." Clerk's Papers (CP) at 16. It made K.D.A.-H. angry, but K.M.R. did not care.

As K.M.R. was retrieving the second dog, which was under the bed on which K.D.A.-H. was sitting, she called K.D.A.-H. a "little bitch," and he responded by giving her what she would later characterize as a "quick tap in the face with his foot." Rep. of Proc. (RP) at 26. She threw a lotion bottle and a vitamin bottle at him, striking him with one of the bottles, and then went downstairs to speak to her father, who was visiting the home at the time.

K.D.A.-H. followed her downstairs and, on catching up with her, hit her on the left side of her head with an open hand. K.M.R. described it as a "hard high five." RP at 30. The blow led to a mutual fight, during which she suffered a bloody nose. Although K.D.A.-H. was 16 at the time and K.M.R. was 11, she weighed more than he did, given his then-recent weight loss.

K.M.R.'s father (he is not K.D.A.-H.'s father) told K.M.R. to report her brother's actions to a school counselor and she did, as soon as she arrived at school. Evidence of her bloody nose was still visible. The counselor asked her about it and summoned the school resource officer. Photographs were taken and K.M.R. made a statement that she signed under penalty of perjury.

The State charged K.D.A.-H. with one count of assault in the fourth degree, based on the kick or tap in the face that occurred upstairs. The case proceeded to an adjudicatory hearing. At the hearing, K.M.R. acknowledged that in her statement given at school she had referred to K.D.A.-H.'s foot tap to her face as a kick. She testified that it was not like kicking a soccer ball, though, and that K.D.A.-H. was too weak at the time to kick hard.

K.D.A.-H. defended against the charge with argument that what happened with K.M.R. was a "typical and common and de minimis interaction between siblings" that was "de minimis mutual combat" rather than a fourth degree assault. RP at 133.

3

At the conclusion of the evidence and argument, the court announced its decision, finding K.D.A.-H. guilty of the assault charge. It observed that K.M.R. had been a credible witness who tried to testify "to the very best of her ability" even though it was apparent that "[s]he did not necessarily want to be here today; that she wanted this to be—my words—water under the bridge." RP at 141. Addressing the defense argument that K.D.A.-H.'s actions did not amount to a fourth degree assault, the court observed:

> I don't have to get further than the tap to the head under the bed, quite frankly, to find a 4th Degree Assault as an unwanted touching. She further on redirect said to [the prosecutor] when he specifically asked her whether it was a kick or a tap to the head, she identified that as upsetting her, which I think completes the definition of a 4th Degree Assault, which is an assault which is unwanted touching.
>
> So, you know, potentially you've got two separate—this could have been a two Count, I guess, Information by the State had they chosen to identify both. I'm focusing only on the tap/kick to the head. I don't think I need to go any further; I don't even think I need to get downstairs in the testimony to find that this was an unwanted touching or she wouldn't have been upset by it, as she testified.

RP at 143-44. The court added,

> Everybody has transitioned well beyond this and I get that, but the reality is, is the police were called, reports were taken, it was the State's prerogative to pursue this today and—and I am satisfied that this has been proven beyond a reasonable doubt.

RP at 144.

4

No. 38899-9-III
*State v. K.D.A.-H.*

At the disposition hearing, the court sentenced K.D.A.-H. to local sanctions of no confinement and 12 months' community supervision. The court thereafter entered written findings of fact and conclusions of law. K.D.A.-H. appeals.

ANALYSIS

A person is guilty of fourth degree assault "if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another." RCW 9A.36.041(1). "Assault is an intentional touching or striking of another person that is harmful or offensive, regardless of whether it results in physical injury." *State v. Tyler*, 138 Wn. App. 120, 130, 155 P.3d 1002 (2007).

K.D.A.-H. argues that given the elements of fourth degree assault and the juvenile court's findings and conclusions, there was insufficient evidence of the essential element of a touching that was harmful or offensive. He emphasizes that the court found an "unwanted" touch rather than an "offensive" one, pointing to the court's finding that K.M.R. "identified the kick, or the tap . . . as an unwanted touching," Br. of Appellant at 10, and the following conclusions of law:

1. A fourth-degree assault is an unwanted touching.

. . . .

3. [K.M.R.] identified the touch as unwanted.

4. [K.D.A.-H.] is guilty of fourth-degree assault for the unwanted touching of [K.M.R.] on October 6, 2021, within the State of Washington.

CP at 17.

5

If we disagree, he argues that at a minimum, the case must be remanded for additional findings. We address these challenges in turn.

I.     THE EVIDENCE WAS SUFFICIENT

The court's finding that K.D.A.-H's touching was "unwanted" is not a basis for concluding that the court may have found it harmful, but it *is* a basis for concluding that the court may have found it to be offensive. At issue, then, is the sufficiency of the evidence to establish an offensive touching.

Had this been a jury trial, and had it been deemed necessary to define "offensive" for the jury, the note on use for pattern criminal instruction 35.50 provides the following definition: "A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL § 35.50, at 619 (5th ed. 2021) (adapting the definition from section 19 of the *Restatement (Second) of Torts* (AM. LAW INST. 1965)). As commonly used, "offensive" means "causing displeasure or resentment **:** giving offense **:** INSULTING, AFFRONTING." MERRIAM-WEBSTER UNABRIDGED, https://unabridged.merriam-webster.com/unabridged/offensive.

Due process requires the State to prove every element of the crime charged beyond a reasonable doubt. *State v. C.B.*, 195 Wn. App. 528, 537-38, 380 P.3d 626 (2016) (citing *State v. Baeza*, 100 Wn.2d 487, 488, 670 P.2d 646 (1983)). "'The test for

determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt.'" *Id.* at 538 (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). Where trial was to the bench, this is ordinarily done by determining whether substantial evidence supports the findings of fact, and if so, whether the findings support the conclusions of law. *Id.* Where, as here, the trial court omits a finding on an essential element (thereby requiring remand), the State may still have met its burden of proof. *State v. Alvarez*, 128 Wn.2d 1, 19, 904 P.2d 754 (1995). In such a case, we review whether the evidence was sufficient for a rational trier of fact to find the necessary elements. *Id.*

During K.M.R.'s direct examination, she testified:

> Q	Was there any more physical contact in the bedroom between you and [K.D.A.-H.]?
> A	Yes, there was.
> Q	And what happened in the bedroom?
> A	I threw a lotion bottle at him and a vitamin bottle.
> Q	Okay. And why did you do that?
> A	Because I was mad. I acted out of anger.
> Q	Well, that's understandable. Why did you throw them? What were you angry about?
> A	Him kicking me in the face.

RP at 28. Her reaction to the tap or kick was revisited in cross-examination:

Q       Okay.  Here as you remember right now though, you remember that he tapped you in the face with his foot.

A       How I remember it now?

Q       Yes.

A       Yes.

Q       Okay.  And you don't remember crying after he did that?

A       I can't remember.  I don't know if I was crying, but I was very upset.  I know that.

Q       You remember it making you very mad?

A       Yes, I remember it making me very upset.

. . . .

Q       And when you got up off the floor, you threw a vitamin bottle and a lotion bottle at [K.D.A.-H.]?

A       Yeah.

Q       And you missed him with the vitamin bottle.

A       No.  I think I missed—

Q       You hit him with—

A       I think I missed him with the vitamin bottle maybe.

Q       Okay.  You hit him with one of the bottles.

A       Yes.

RP at 47-48.

On redirect examination, K.M.R. testified:

Q       You said you were upset when [defense counsel] asked you if you—if [K.D.A.-H.]'s foot touched your head.  Do you remember you called it a tap and then a kick?  You talked about that.

A       Yeah.

Q       And you told [her] you were upset.  Why were you upset?

A       When?

8

Q       When his foot touched your head.

A       Wouldn't you be upset if a foot touched your head?

Q       So you were upset that he kicked you, tapped you, whatever we want to call it?

A       Yeah.

Q       And when he gave you the hard high five, were you also offended?

A       Yes.

RP at 83.  A last question was posed by the court:

Q       You seem to distinguish between being upset and being mad. You kind of went back and forth, so do you have a different definition on what it means to be upset as opposed to being mad?  Are they the same thing to you or different?

THE WITNESS: Mad is different than upset because mad is like really, really mad, like—that didn't really explain it.  (Laughs)

Mad is like when you're really angry and you just can't control yourself.  And upset is when you can control yourself, but you don't really care because you're upset.

RP at 84.

When one of the essential elements of a crime is whether the person affected by the defendant's act would reasonably react in a particular way, the actual reaction of the person actually affected is key evidence.  In *State v. Kohonen*, 192 Wn. App. 567, 580, 370 P.3d 16 (2016), for example, where the defendant was charged with making a true threat, testimony regarding the actual reactions of three members of the intended audience "provide a guide for what constituted a reasonable reaction under the

9

circumstances." Similarly, in *State v. Kilburn*, our Supreme Court observed that "in the vast majority of cases . . . a reasonably foreseeable response from the listener and an actual reasonable response should be the same." 151 Wn.2d 36, 45 n.3, 84 P.3d 1215 (2004) (citing *Doe v. Pulaski County Special Sch. Dist.*, 306 F.3d 616, 623 (8th Cir. 2002)). The only case where there might be a different outcome "is where the recipient suffers from some unique sensitivity unknown to the speaker." *Id.*

K.D.A.-H. has never contended that K.M.R. suffers from some undue or unique sensitivity. Her testimony about her and her brother's actions appeared to be fair and balanced. The juvenile court found her "incredibly credible" and, as noted earlier, shared its observation that K.M.R. tried to provide her sworn testimony "to the very best of her ability." RP at 143, 141. K.M.R.'s immediate response to the touching (throwing bottles at K.D.A.-H.), her reporting the event to her school counselor that day, and her testimony at the adjudication hearing that the foot tap to her face made her mad and very upset are all evidence that the touching was offensive—a reaction on her part that we find reasonable and, by extension, that we find objectively reasonable. More so than any other part of the body, uninvited contact to a person's face is likely to be offensive. We find apt K.M.R.'s response, when asked why the tap with the foot upset her, "Wouldn't you be upset if a foot touched your head?" RP at 83. The evidence was sufficient.

No. 38899-9-III
*State v. K.D.A.-H.*

II.    WE WILL REMAND FOR FINDINGS ON THE ISSUES OF INTENTION AND
       OFFENSIVENESS

In a case that is appealed, JuCR 7.11(d) requires the court to enter written findings and conclusions, with findings that "state the ultimate facts as to each element of the crime and the evidence upon which the court relied in reaching its decision." K.D.A.-H. points out that the juvenile court "failed to enter any finding or conclusion that the quick tap of the foot was intentional or that it was offensive." Br. of Appellant at 17. He asks us to remand so that, if supported by the evidence, the court can enter the missing findings and conclusions.

The State agrees that remand is appropriate for entry of a finding that the assault was intentional. It disagrees that remand for entry of a finding of offensiveness is appropriate, however, arguing that "the uncontroverted evidence about the aftermath of the assault reveals that K.M.R. was offended and harmed by K.D.A.-H.'s assault." Br. of Resp't at 12. It cites *State v. Banks*, 149 Wn.2d 38, 46, 65 P.3d 1198 (2003), in which the Supreme Court held that where a court's unchallenged written findings necessitated an inference of the essential element of knowledge, the court's failure to explicitly address knowledge in its findings was harmless beyond a reasonable doubt.

We do not agree that the juvenile court's findings and conclusions that the touching was unwanted necessitate an inference that it was offensive. On remand, the court should address the need for findings on intention and offensiveness.

11

No. 38899-9-III
*State v. K.D.A.-H.*


Consistent with the remand order in *Alvarez*, we affirm the finding of guilty and remand. *See* 128 Wn.2d at 22. We allow the juvenile court 60 days from entry of the mandate to accomplish entry of appropriate findings and conclusions, failing which the fourth degree assault charge must be dismissed. *See id.*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.P.T.

WE CONCUR:


_____
Fearing, C.J.

_____
Staab, J.

12